SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

YVONNE GIPSON, )
1735 Shepherd Street, N.W. )
Washington, D.C. 20011 )
 )
Plaintiff, )
 )
v. ) No.
 )
WELLS FARGO HOME MORTGAGE, INC., )            05-0003956
 )
Defendant. )

RECEIVED
CIVIL CLERK'S OFFICE
MAY 2 5 2005
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PRELIMINARY STATEMENT

1.) This is an action by plaintiff, Yvonne Gipson, a 64 year old African American woman and exceptionally successful home mortgage consultant formerly employed by defendant Wells Fargo Home Mortgage, Inc. ("Wells Fargo"). The case arises under the D.C. Human Rights Act, DC Stat §§2-1402.01, et seq., and seeks redress for plaintiff's retaliatory discharge by defendant on July 12, 2004.

2.) Wells Fargo recognized Ms. Gipson in 2003 with ranking sixth nationally in renovation loan volume and as being the highest producing home mortgage consultant in her branch, having originated more than $36 million in mortgage loans. Wells Fargo also recognized Ms. Gipson in 2003 for being significantly above average in loan profitability and for her excellent customer service ratings. In 2004, Wells Fargo recognized Ms. Gipson for being the only top producer in her region with 100% customer service satisfaction.

3.) On July 12, 2004, Wells Fargo discharged Ms. Gipson. Wells Fargo not only gave Ms. Gipson no prior notice, it never issued anything written concerning her dismissal. The

1

reasons articulated by Wells Fargo for terminating Ms. Gipson were that she had supposedly been the conduit of fraudulent information from applicants for mortgage loans to Wells Fargo and had violated Wells Fargo policy in originating mortgage loans.

4.)    Ms. Gipson did not convey fraudulent information from mortgage loan applicants to Wells Fargo or violate any Wells Fargo established policy in originating mortgage loans. None of the borrowers of mortgage loans originated by Ms. Gipson for Wells Fargo defaulted on their loans. And none of the mortgage loans originated by Ms. Gipson caused a loss for Well Fargo.

5.)    In truth, Wells Fargo discharged Ms. Gipson in retaliation for filing a charge of discrimination and retaliation against Wells Fargo with the U.S. Equal Employment Opportunity Commission in 1999, and for her on-going pursuit of claims of discrimination and retaliation against Wells Fargo beginning in 2000 in <u>Yvonne Gipson v. Wells Fargo Corporation, et al.</u>, Civ. Action No. 00-2865 (D.D.C.).

6.)    To remedy Wells Fargo's unlawful conduct, Ms. Gipson seeks: a.) an order declaring that Wells Fargo retaliated against Ms. Gipson in discharging her on July 12, 2004, and reinstating her in Wells Fargo's employ from that date forward; b.) compensatory damages in an amount to be determined at trial not less than $2 million, to compensate Ms. Gipson for the economic and non-economic injury she suffered as a result of her retaliatory discharge; c.) punitive damages in an amount to be determined at trial not less then treble the amount of compensatory damages; and d.) an award of the attorneys' fees and costs incurred in the prosecution of this action.

## PARTIES AND JURISDICTION

7.) Plaintiff Yvonne Gipson was formerly employed by Wells Fargo Home Mortgage, Inc., as a home mortgage consultant stationed in the District of Columbia, until her retaliatory discharge that is the subject of this action. Ms. Gipson is a 64 year old African American woman and resides at the address recited in the caption of this Complaint.

8.) Defendant Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), is doing business and, at all times relevant, did business continuously and systematically in the District of Columbia underwriting home mortgage loans in branch offices located in and around the District, under the names Wells Fargo Home Mortgage, Inc., and Norwest Mortgage, Inc. Defendant Wells Fargo is an incorporated division of Wells Fargo & Company, an exchange listed, publicly traded financial services company, and an affiliate of Wells Fargo Bank, N.A., a chartered national bank association, both of which have their principal places of business in San Francisco, California. From April of 1998 until the actions which gave rise to this suit, defendant Wells Fargo employed plaintiff in the District of Columbia to originate home mortgage loans.

9.) Jurisdiction of this Court is based on the D.C. Human Rights Act, DC Stat §§2-1402.01, et seq., and DC Stat §§13-334, 423.

## STATEMENT OF THE CASE

10.) Plaintiff Yvonne Gipson is an exceptionally successful home mortgage consultant who specializes in originating residential mortgages throughout the United States. Ms. Gipson holds a Master of Science Degree from the University of Southern California and, in total, has over 35 years of experience in real estate, real estate financing, and management.

3

11.) Ms. Gipson was originally employed as a home mortgage consultant by defendant Wells Fargo in February of 1996, under defendant's former trade name Norwest Mortgage, Inc.[1] Plaintiff's job with defendant was to originate home mortgages, with emphasis on the District of Columbia metropolitan area. At all times relevant, plaintiff was assigned to the Wells Fargo Mid-Atlantic Region and stationed to work from an office in the District of Columbia. Beginning in October of 2000 and continuing until her unlawful discharge, Ms. Gipson was stationed at the Wells Fargo office located at 2808 Douglas Street, N.E., Washington, D.C. 20018.

12.) Since 1998, Ms. Gipson has specialized in originating mortgages for the renovation and permanent financing of homes, an especially lucrative market for mortgage lenders such as defendant Wells Fargo.

13.) On May 5, 1998, Ms. Gipson filed an internal complaint against Wells Fargo alleging that defendant had discriminated against her and subjected her to a hostile work environment on account of her race, her age, and need to recuperate from cancer surgery.

14.) On or about October 7, 1998, Ms. Gipson prevailed on the foregoing complaint by reaching a settlement with defendant which, among other matters, obligated defendant to pay Ms. Gipson the sum of $26,155.19 (Twenty-Six Thousand One Hundred And Fifty-Five Dollars and Nineteen Cents).

15.) Later that same month, defendant Wells Fargo advertised an opening as a Branch Sales Manager at its office at 4926 Wisconsin Avenue, N.W., Washington, D.C. 20016, a

---

[1] Effective April 17, 2000, and while plaintiff was in its employ, defendant Wells Fargo changed its name from Norwest Mortgage, Inc., to Wells Fargo Home Mortgage, Inc. Except as otherwise stated in this Complaint, plaintiff's former employer is referred to as defendant, Wells Fargo, or defendant Wells Fargo.

4

position that would have been a promotion for plaintiff and paid her substantially more income had she been selected.

16.) Plaintiff timely applied for the foregoing Branch Manager position, interviewed for it on three occasions between October and December of 1998, and was the best qualified candidate for the position.

17.) Despite Ms. Gipson's qualifications, defendant selected a less qualified, African American male 30 or more years younger than she; one who, unlike Ms. Gipson, had never filed a complaint of discrimination against defendant or otherwise opposed defendant's discriminatory practices.

18.) On November 3, 1999, Ms. Gipson timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission in which she alleged that defendant engaged in discrimination and retaliation by not selecting her as a Branch Manager.

19.) The Equal Employment Opportunity Commission investigated Ms. Gipson's administrative complaint and, in due course, issued her a right to sue letter.

20.) On November 29, 2000, plaintiff filed suit over having been denied promotion to Branch Manager by defendant due to discrimination and retaliation in <u>Yvonne Gipson v. Wells Fargo Corporation, et al.</u>, Civ. Action No. 00-2865 (D.D.C.).

21.) Since the commencement of that action and until the events which gave rise to this suit, Wells Fargo recognized Ms. Gipson's superior performance, her exceptionally profitable specialty in mortgages used to acquire and renovate residences, and her efficient use of defendant's loan processors to complete and close mortgages. At all times during her employment with Wells Fargo, Ms. Gipson's performance was exemplary and her conduct beyond reproach.

22.) In 2003, Plaintiff's last full year of employment with Defendant, Wells Fargo specifically recognized Ms. Gipson as sixth in the nation for originating renovation loans at Wells Fargo and as the highest producing Home Mortgage Consultant in her branch, having originated closed loans exceeding $36 million in total. In that same year, Ms. Gipson was also recognized for having significantly above average loan profitability and for her excellent customer service.

23.) Nonetheless, on July 12, 2004, Wells Fargo discharged Ms. Gipson, which led to the cancellation of Ms. Gipson's own residential mortgage with defendant and caused significant financial loss to Ms. Gipson. Wells Fargo not only gave Ms. Gipson no prior notice, it never issued anything written concerning her dismissal.

24.) The reasons articulated by Wells Fargo for terminating Ms. Gipson were that she had supposedly been the conduit of fraudulent information submitted by applicants for mortgage loans from Wells Fargo and had violated Wells Fargo policy in originating mortgage loans.

25.) Ms. Gipson did not, knowingly or unknowingly, convey fraudulent information from mortgage loan applicants to Wells Fargo or violate Wells Fargo policy in originating mortgage loans.

26.) None of the borrowers of mortgage loans originated by Ms. Gipson for Wells Fargo defaulted on their loans.

27.) None of the mortgage loans originated by Ms. Gipson caused a loss for Well Fargo.

28.) Wells Fargo was not subject to any fines, penalties, or sanctions as a result of any mortgage loans originated by Ms. Gipson.

6

29.) Wells Fargo discharged Ms. Gipson in retaliation for filing a Charge of Discrimination against defendant with the Equal Employment Opportunity Commission in November of 1999, and for her on-going pursuit of claims of discrimination and retaliation against defendant in Yvonne Gipson v. Wells Fargo Corporation, et al., Civ. Action No. 00-2865 (D.D.C.).

## COUNT I
### (Retaliation Under The D.C. Human Rights Act)

30.) Plaintiff repeats the allegations contained in paragraphs 1 through 29 above as though fully set forth here.

31.) Plaintiff engaged in activity that is protected under the D.C. Human Rights Act, DC Stat §§2-1402.61, when she filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on November 3, 1999, which alleged that defendant discriminated and retaliated against plaintiff in failing to select her as a Branch Manager; and when she filed and continued the prosecution of Yvonne Gipson v. Wells Fargo Corporation, et al., Civ. Action No. 00-2865 (D.D.C.), which alleged that defendant discriminated and retaliated against plaintiff in failing to select her as a Branch Manager.

32.) Defendant retaliated against plaintiff and interfered with plaintiff's exercise, enjoyment and enforcement of rights protected under the DC Human Rights Act, DC Stat §§2-1402.01, et seq., when it discharged plaintiff without cause and on pretextual grounds on July 12, 2004.

33.) Defendant violated the DC Human Rights Act, DC Stat §2-1402.61, when it discharged plaintiff without cause and on pretextual grounds on July 12, 2004, in retaliation for plaintiff's exercise, enjoyment and enforcement of rights protected under the DC Human Rights Act, DC Stat §§2-1402.01, et seq.

7

34.) Defendant's violation of the DC Human Rights Act, DC Stat §2-1402.61, caused Ms. Gipson to sustain financial damages in lost salary and future earnings, lost commissions on loans, damages due to the cancellation of plaintiff's residential home loan formerly held by defendant, and other reasonably foreseeable consequential damages incurred as a natural and proximate result of defendant's termination of plaintiff's employment.

35.) Defendant's violation of the DC Human Rights Act, DC Stat §2-1402.61, caused Ms. Gipson to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

36.) Defendant's act of discharging Ms. Gipson was egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the DC Human Rights Act, DC Stat §2-1402.61; outrageously, wantonly, and oppressively; and with legal and actual malice.

## COUNT II
### (Retaliation Under The D.C. Human Rights Act)

37.) Plaintiff repeats the allegations contained in paragraphs 1 through 36 above as though fully set forth here.

38.) Plaintiff engaged in activity that is protected under the D.C. Human Rights Act, DC Stat §§2-1402.61, when she filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on November 3, 1999, which alleged that defendant discriminated and retaliated against plaintiff in failing to select her as a Branch Manager; and when she filed and continued the prosecution of Yvonne Gipson v. Wells Fargo Corporation, et al., Civ. Action No. 00-2865 (D.D.C.), which alleged that defendant discriminated and retaliated against plaintiff in failing to select her as a Branch Manager.

8

39.) Defendant retaliated against plaintiff for opposing one or more practices of defendant made unlawful under the DC Human Rights Act, DC Stat §§2-1402.01, et seq., when it discharged plaintiff without cause and on pretextual grounds on July 12, 2004.

40.) Defendant violated the DC Human Rights Act, DC Stat §2-1402.61, when it discharged plaintiff without cause and on pretextual grounds on July 12, 2004, in retaliation for plaintiff's opposition to one or more practices of defendant made unlawful under the DC Human Rights Act, DC Stat §§2-1402.01, et seq.

41.) Defendant's violation of the DC Human Rights Act, DC Stat §2-1402.61, caused Ms. Gipson to sustain financial damages in lost salary and future earnings, lost commissions on loans, damages due to the cancellation of plaintiff's residential home loan formerly held by defendant, and other reasonably foreseeable consequential damages incurred as a natural and proximate result of defendant's termination of plaintiff's employment.

42.) Defendant's violation of the DC Human Rights Act, DC Stat §2-1402.61, caused Ms. Gipson to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

43.) Defendant's act of discharging Ms. Gipson was egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the DC Human Rights Act, DC Stat §2-1402.61; outrageously, wantonly, and oppressively; and with legal and actual malice.

## PRAYER FOR RELIEF

Wherefore, plaintiff Yvonne Gipson respectfully requests that the Court enter judgment in her favor and award her the following relief.

A. An Order declaring that defendant violated plaintiff's civil rights under the D.C. Human Rights Act, DC Stat §§2-1402.01, et seq., and restraining and enjoining defendant from further discrimination and retaliation.

9

B.  An Order reinstating plaintiff in defendant's employ retroactive to July 12, 2004.

C.  Compensatory damages in an amount to be determined at trial not less than $2 million, to compensate plaintiff for the economic and non-pecuniary injuries she suffered as a result of her retaliatory discharge.

D.  Punitive damages in an amount to be determined at trial not less than treble the amount of compensatory damages;

E.  The attorneys' fees and costs incurred by plaintiff in the prosecution of this action.

F.  Such other relief as may be just and appropriate.

### Jury Demand

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

Robert C. Seldon, Esq.
 D.C. Bar No. 245100
Molly E. Buie, Esq.
 D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 305
Washington, D.C. 20004
(202) 955-6968

By: _____
Counsel for Plaintiff

CA Form 1

# Superior Court of the District of Columbia
CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

Yvonne Gipson
_Plaintiff_

vs.

Wells Fargo Home Mortgage Inc
_Defendant_

Civil Action No. 05-0003936

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Robert C Seldon
Name of Plaintiff's Attorney

1319 F Street NW suite 305
Address
Washington DC 20004

(202) 955-6968 ext 113
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date 5/25/05

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.