UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YVONNE GIPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WELLS FARGO HOME MORTGAGE, INC., | )  Civ. Action No. 05-1184 (JMF) |
|   a/k/a Wells Fargo Home Mortgage, | ) |
|   A Division Of Wells Fargo Bank, N.A., | ) |
| | ) |
| WELLS FARGO BANK, N.A., | ) |
| | ) |
| And | ) |
| | ) |
| WELLS FARGO & COMPANY, | ) |
| | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**PRELIMINARY STATEMENT**

1.) This is an action by plaintiff, Yvonne Gipson, a 64 year old African American woman and exceptionally successful home mortgage consultant formerly employed by defendants Wells Fargo Home Mortgage, Inc. (a/k/a Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.); Wells Fargo Bank, N.A.; and/or Wells Fargo & Company ("Wells Fargo").[1] The case arises under the D.C. Human Rights Act, DC Stat §§2-1402.01, et seq., and seeks redress for plaintiff's retaliatory discharge by Wells Fargo on July 12, 2004.

2.) Wells Fargo recognized Ms. Gipson in 2003 with ranking sixth nationally in renovation loan volume and as being the highest producing home mortgage consultant in her

---

[1] As used in this Complaint, the terms "Wells Fargo" and "defendants" refer to all defendants individually and collectively and to all names under which they have done business relevant to this Complaint, unless the text specifies otherwise.

branch, having originated more than $36 million in mortgage loans. Wells Fargo also recognized Ms. Gipson in 2003 for being significantly above average in loan profitability and for her excellent customer service ratings. In 2004, Wells Fargo recognized Ms. Gipson for being the only top producer in her region with 100% customer service satisfaction.

   3.) On July 12, 2004, Wells Fargo discharged Ms. Gipson. Wells Fargo not only gave Ms. Gipson no prior notice, Wells Fargo never issued anything written concerning her dismissal. The reasons articulated by Wells Fargo for terminating Ms. Gipson were that she had supposedly been the conduit of fraudulent information from applicants for mortgage loans to Wells Fargo and had violated Wells Fargo policy in originating mortgage loans.

   4.) Ms. Gipson did not convey fraudulent information from mortgage loan applicants to Wells Fargo or violate any Wells Fargo established policy in originating mortgage loans. None of the borrowers of mortgage loans originated by Ms. Gipson for Wells Fargo defaulted on their loans. And none of the mortgage loans originated by Ms. Gipson caused a loss for Well Fargo.

   5.) In truth, Wells Fargo discharged Ms. Gipson in retaliation for filing a charge of discrimination and retaliation against Wells Fargo with the U.S. Equal Employment Opportunity Commission in 1999, and for her on-going pursuit of claims of discrimination and retaliation against Wells Fargo beginning in 2000 in <u>Yvonne Gipson v. Wells Fargo Corporation</u>, <u>et al</u>., Civ. Action No. 00-2865 (D.D.C.).

   6.) To remedy Wells Fargo's unlawful conduct, Ms. Gipson seeks: a.) an order declaring that Wells Fargo retaliated against Ms. Gipson in discharging her on July 12, 2004, and reinstating her in Wells Fargo's employ from that date forward; b.) compensatory damages in an amount to be determined at trial not less than $2 million, to compensate Ms. Gipson for the

economic and non-economic injury she suffered as a result of her retaliatory discharge; c.) punitive damages in an amount to be determined at trial not less then treble the amount of compensatory damages; and d.) an award of the attorneys' fees and costs incurred in the prosecution of this action.

## PARTIES, JURISDICTION, AND VENUE

7.)   Plaintiff Yvonne Gipson was formerly employed by Wells Fargo as a home mortgage consultant stationed in the District of Columbia, until her retaliatory discharge that is the subject of this action.  Ms. Gipson is a 64 year old African American woman and a citizen of the District of Columbia.

8.)   Defendant Wells Fargo Home Mortgage, Inc. (a/k/a Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.), is doing business and, at all times relevant, did business continuously and systematically in the District of Columbia underwriting home mortgage loans in branch offices located in and around the District, under the names Wells Fargo Home Mortgage, Inc., Wells Fargo Home Mortgage, and Norwest Mortgage, Inc.; and as a division and/or operating segment of defendant Wells Fargo & Company and/or defendant Wells Fargo Bank, N.A.  On information and belief, the balance sheet, income statement, and assets of defendant Wells Fargo Home Mortgage, Inc., are included on the balance sheet, income statement, and assets of defendant Wells Fargo Bank, N.A., and/or defendant Wells Fargo & Company without regard to generally accepted accounting principles.  Defendant Wells Fargo Home Mortgage, Inc., was incorporated and has its principal place of business outside of the District of Columbia.

9.)   Defendant Wells Fargo Bank, N.A., is a chartered national bank association which is doing business and, at all times relevant, did business continuously and systematically

in the District of Columbia underwriting home mortgage loans in branch offices located in and around the District, under the names Wells Fargo Home Mortgage, Inc., Wells Fargo Home Mortgage, and Norwest Mortgage, Inc.  On information and belief, defendant Wells Fargo Bank, N.A, is a division and/or operating segment of defendant Wells Fargo & Company; and its balance sheet, income statement, and assets are included on the balance sheet, income statement, and assets of defendant Wells Fargo & Company without regard to generally accepted accounting principles.  Defendant Wells Fargo Bank, N.A., was incorporated outside of the District of Columbia and has its principal place of business in California.

10.)   Defendant Wells Fargo & Company is an exchange listed, publicly traded financial services company, which is doing business and, at all times relevant, did business continuously and systematically in the District of Columbia underwriting home mortgage loans in branch offices located in and around the District, under the names Wells Fargo Home Mortgage, Inc., Wells Fargo Home Mortgage, and Norwest Mortgage, Inc.  On information and belief, defendant Wells Fargo Home Mortgage, Inc. (a/k/a Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.), and defendant Wells Fargo Bank, N.A, are divisions and/or operating segments of defendant Wells Fargo & Company; and their balance sheets, income statements, and assets are included on the balance sheet, income statement, and assets of defendant Wells Fargo & Company without regard to generally accepted accounting principles.  Defendant Wells Fargo & Company was incorporated outside of the District of Columbia and has its principal place of business in California.

11.)   Jurisdiction of this Court is based on 28 U.S.C. §1332, because there is complete diversity of citizenship between Ms. Gipson and all defendants, and since the amount in

controversy exceeds the sum of $75,000.00. exclusive of interests and costs. Venue lies in this judicial district pursuant to 28 U.S.C. §§1391(a)(1), (a)(2).

## STATEMENT OF THE CASE

12.) Plaintiff Yvonne Gipson is an exceptionally successful home mortgage consultant who specializes in originating residential mortgages throughout the United States. Ms. Gipson holds a Master of Science Degree from the University of Southern California and, in total, has over 35 years of experience in real estate, real estate financing, and management.

13.) Ms. Gipson was originally employed as a home mortgage consultant by Wells Fargo[2] in February of 1996, under defendants' former trade name Norwest Mortgage, Inc.[3] Plaintiff's job with defendants was to originate home mortgages, with emphasis on the District of Columbia metropolitan area. At all times relevant, plaintiff was assigned to the Wells Fargo Mid-Atlantic Region and stationed to work from an office in the District of Columbia. Beginning in October of 2000 and continuing until her unlawful discharge, Ms. Gipson was stationed at the Wells Fargo office located at 2808 Douglas Street, N.E., Washington, D.C. 20018.

14.) Since 1998, Ms. Gipson has specialized in originating mortgages for the renovation and permanent financing of homes, an especially lucrative market for mortgage lenders such as Wells Fargo.

---

[2] As used in this Complaint, the terms "Wells Fargo" and "defendants" refer to all defendants individually and collectively and to all names under which they have done business relevant to this Complaint,, unless the text specifies otherwise.
[3] Effective April 17, 2000, and while plaintiff was in its employ, Wells Fargo changed its name from Norwest Mortgage, Inc., to Wells Fargo Home Mortgage, Inc.

15.)	On May 5, 1998, Ms. Gipson filed an internal complaint against Wells Fargo alleging that Wells Fargo had discriminated against her and subjected her to a hostile work environment on account of her race, her age, and need to recuperate from cancer surgery.

16.)	On or about October 7, 1998, Ms. Gipson prevailed on the foregoing complaint by reaching a settlement with Wells Fargo which, among other matters, obligated Wells Fargo to pay Ms. Gipson the sum of $26,155.19 (Twenty-Six Thousand One Hundred And Fifty-Five Dollars and Nineteen Cents).

17.)	Later that same month, Wells Fargo advertised an opening as a Branch Sales Manager at its office at 4926 Wisconsin Avenue, N.W., Washington, D.C. 20016, a position that would have been a promotion for plaintiff and paid her substantially more income had she been selected.

18.)	Plaintiff timely applied for the foregoing Branch Manager position, interviewed for it on three occasions between October and December of 1998, and was the best qualified candidate for the position.

19.)	Despite Ms. Gipson's qualifications, Wells Fargo selected a less qualified, African American male 30 or more years younger than she; one who, unlike Ms. Gipson, had never filed a complaint of discrimination against Wells Fargo or otherwise opposed Wells Fargo's discriminatory practices.

20.)	On November 3, 1999, Ms. Gipson timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission in which she alleged that Wells Fargo engaged in discrimination and retaliation by not selecting her as a Branch Manager.

21.)	The Equal Employment Opportunity Commission investigated Ms. Gipson's administrative complaint and, in due course, issued her a right to sue letter.

22.) On November 29, 2000, plaintiff filed suit over having been denied promotion to Branch Manager by Wells Fargo due to discrimination and retaliation in <u>Yvonne Gipson v. Wells Fargo Corporation</u>, <u>et</u> <u>al</u>., Civ. Action No. 00-2865 (D.D.C.).

23.) Since the commencement of that action and until the events which gave rise to this suit, Wells Fargo recognized Ms. Gipson's superior performance, her exceptionally profitable specialty in mortgages used to acquire and renovate residences, and her efficient use of defendant's loan processors to complete and close mortgages. At all times during her employment with Wells Fargo, Ms. Gipson's performance was exemplary and her conduct beyond reproach.

24.) In 2003, Plaintiff's last full year of employment with Wells Fargo, Wells Fargo specifically recognized Ms. Gipson as sixth in the nation for originating renovation loans at Wells Fargo and as the highest producing Home Mortgage Consultant in her branch, having originated closed loans exceeding $36 million in total. In that same year, Ms. Gipson was also recognized for having significantly above average loan profitability and for her excellent customer service.

25.) Nonetheless, on July 12, 2004, Wells Fargo discharged Ms. Gipson, which led to the cancellation of Ms. Gipson's own residential mortgage with Wells Fargo and caused significant financial loss to Ms. Gipson. Wells Fargo not only gave Ms. Gipson no prior notice, Wells Fargo never issued anything written concerning her dismissal.

26.) The reasons articulated by Wells Fargo for terminating Ms. Gipson were that she had supposedly been the conduit of fraudulent information submitted by applicants for mortgage loans from Wells Fargo and had violated Wells Fargo policy in originating mortgage loans.

27.) Ms. Gipson did not, knowingly or unknowingly, convey fraudulent information from mortgage loan applicants to Wells Fargo or violate Wells Fargo policy in originating mortgage loans.

28.) None of the borrowers of mortgage loans originated by Ms. Gipson for Wells Fargo defaulted on their loans.

29.) None of the mortgage loans originated by Ms. Gipson caused a loss for Well Fargo.

30.) Wells Fargo was not subject to any fines, penalties, or sanctions as a result of any mortgage loans originated by Ms. Gipson.

31.) Wells Fargo discharged Ms. Gipson in retaliation for filing a Charge of Discrimination against Wells Fargo with the Equal Employment Opportunity Commission in November of 1999, and for her on-going pursuit of claims of discrimination and retaliation against Wells Fargo in <u>Yvonne Gipson v. Wells Fargo Corporation</u>, <u>et al</u>., Civ. Action No. 00-2865 (D.D.C.).

## COUNT I
### (Retaliation Under The D.C. Human Rights Act)

32.) Plaintiff repeats the allegations contained in paragraphs 1 through 31 above as though fully set forth here.

33.) Plaintiff engaged in activity that is protected under the D.C. Human Rights Act, DC Stat §§2-1402.61, when she filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on November 3, 1999, which alleged that Wells Fargo discriminated and retaliated against plaintiff in failing to select her as a Branch Manager; and when she filed and continued the prosecution of <u>Yvonne Gipson v. Wells Fargo Corporation</u>, <u>et</u>

8

al., Civ. Action No. 00-2865 (D.D.C.), which alleged that Wells Fargo discriminated and retaliated against plaintiff in failing to select her as a Branch Manager.

34.) Wells Fargo retaliated against plaintiff and interfered with plaintiff's exercise, enjoyment and enforcement of rights protected under the DC Human Rights Act, DC Stat §§2-1402.01, et seq., when Wells Fargo discharged plaintiff without cause and on pretextual grounds on July 12, 2004.

35.) Wells Fargo violated the DC Human Rights Act, DC Stat §2-1402.61, when Wells Fargo discharged plaintiff without cause and on pretextual grounds on July 12, 2004, in retaliation for plaintiff's exercise, enjoyment and enforcement of rights protected under the DC Human Rights Act, DC Stat §§2-1402.01, et seq.

36.) Wells Fargo's violation of the DC Human Rights Act, DC Stat §2-1402.61, caused Ms. Gipson to sustain financial damages in lost salary and future earnings, lost commissions on loans, damages due to the cancellation of plaintiff's residential home loan formerly held by Wells Fargo, and other reasonably foreseeable consequential damages incurred as a natural and proximate result of Wells Fargo's termination of plaintiff's employment.

37.) Wells Fargo's violation of the DC Human Rights Act, DC Stat §2-1402.61, caused Ms. Gipson to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

38.) Wells Fargo's act of discharging Ms. Gipson was egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the DC Human Rights Act, DC Stat §2-1402.61; outrageously, wantonly, and oppressively; and with legal and actual malice.

39.) All defendants are jointly and severally liable for the injury Wells Fargo caused Ms. Gipson that is the subject of this Complaint and for the damages to which Ms. Gipson is entitled.

## COUNT II
### (Retaliation Under The D.C. Human Rights Act)

40.) Plaintiff repeats the allegations contained in paragraphs 1 through 39 above as though fully set forth here.

41.) Plaintiff engaged in activity that is protected under the D.C. Human Rights Act, DC Stat §§2-1402.61, when she filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on November 3, 1999, which alleged that Wells Fargo discriminated and retaliated against plaintiff in failing to select her as a Branch Manager; and when she filed and continued the prosecution of Yvonne Gipson v. Wells Fargo Corporation, et al., Civ. Action No. 00-2865 (D.D.C.), which alleged that Wells Fargo discriminated and retaliated against plaintiff in failing to select her as a Branch Manager.

42.) Wells Fargo retaliated against plaintiff for opposing one or more practices of Wells Fargo made unlawful under the DC Human Rights Act, DC Stat §§2-1402.01, et seq., when Wells Fargo discharged plaintiff without cause and on pretextual grounds on July 12, 2004.

43.) Wells Fargo violated the DC Human Rights Act, DC Stat §2-1402.61, when Wells Fargo discharged plaintiff without cause and on pretextual grounds on July 12, 2004, in retaliation for plaintiff's opposition to one or more practices of Wells Fargo made unlawful under the DC Human Rights Act, DC Stat §§2-1402.01, et seq.

44.) Wells Fargo's violation of the DC Human Rights Act, DC Stat §2-1402.61, caused Ms. Gipson to sustain financial damages in lost salary and future earnings, lost commissions on loans, damages due to the cancellation of plaintiff's residential home loan

formerly held by Wells Fargo, and other reasonably foreseeable consequential damages incurred as a natural and proximate result of Wells Fargo's termination of plaintiff's employment.

45.) Wells Fargo's violation of the DC Human Rights Act, DC Stat §2-1402.61, caused Ms. Gipson to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

46.) Wells Fargo's act of discharging Ms. Gipson was egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the DC Human Rights Act, DC Stat §2-1402.61; outrageously, wantonly, and oppressively; and with legal and actual malice.

47.) All defendants are jointly and severally liable for the injury Wells Fargo caused Ms. Gipson that is the subject of this Complaint and for the damages to which Ms. Gipson is entitled.

## PRAYER FOR RELIEF

Wherefore, plaintiff Yvonne Gipson respectfully requests that the Court enter judgment in her favor and award her the following relief.

A. An Order declaring that Wells Fargo violated plaintiff's civil rights under the D.C. Human Rights Act, DC Stat §§2-1402.01, et seq., and restraining and enjoining Wells Fargo from further discrimination and retaliation.

B. An Order reinstating plaintiff in Wells Fargo's employ retroactive to July 12, 2004.

C. Compensatory damages in an amount to be determined at trial not less than $2 million from all defendants jointly and severally, to compensate plaintiff for the economic and non-pecuniary injuries she suffered as a result of her retaliatory discharge.

  D. Punitive damages in an amount to be determined at trial not less then treble the amount of compensatory damages from all defendants jointly and severally;

  E. The attorneys' fees and costs incurred by plaintiff in the prosecution of this action from all defendants jointly and severally.

  F. Such other relief as may be just and appropriate.

## Jury Demand

Plaintiff requests a trial by jury of all issues so triable.

      Respectfully submitted,


      Robert C. Seldon, Esq.
       D.C. Bar No. 245100
      Molly E. Buie, Esq.
       D.C. Bar No. 483767
      Robert C. Seldon & Associates, P.C.
      1319 F Street, N.W., Suite 305
      Washington, D.C.  20004
      (202) 955-6968




      By: _____
      Counsel for Plaintiff