## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YVONNE GIPSON, )  |  |
| ) | |
| Plaintiff, ) | Civil Action Nos.: 1:00cv 02865 (JMF) |
| ) | 1:05cv 01184 (JMF) |
| vs. ) | |
| ) | Next Scheduled Event: 7/17/06 |
| WELLS FARGO BANK, N.A., ) | Summary Judgment Deadline |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT'S MOTION TO STRIKE EXPERT

**COMES NOW**, Wells Fargo Bank, N.A., (hereinafter "Defendant"), by and through its

undersigned attorneys, and moves to strike Plaintiff's designated expert – Frederick C. Douglas–

as a witness in this matter.   As set forth below, Mr. Douglas' opinions are completely unreliable

and irrelevant to the issues in this case, and are an improper attempt to usurp the role of the jury

should this case reach trial

Respectfully submitted,

**KHAN ROMBERGER PLLC**

/s/

BY:_____

Karen A. Khan, Esquire
D.C. Bar No. 455297
Timothy W. Romberger, Esquire
D.C. Bar No. 458225
1025 Connecticut Avenue
Suite 1000
Washington, D.C.  20036
(202) 828-1243
**ATTORNEYS FOR DEFENDANT**

Dated:  June 16, 2006

## <u>CERTIFICATE OF CONSULTATION</u>

I hereby certify that diligent efforts were made to obtain the Plaintiff's consent to

voluntarily agree to withdraw Frederick Douglas as an expert in this case.  Plaintiff has refused

and the instant motion is contested.   A conference call was held between the parties and the

Court on this issue on June 20, 2006.

/s/

By:_____

Timothy W. Romberger

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| YVONNE GIPSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Nos.: 1:00cv 02865 (JMF) |
| | ) | 1:05cv 01184 (JMF) |
| vs. | ) | |
| | ) | Next Scheduled Event: <u>7/17/06</u> |
| WELLS FARGO BANK, N.A., | ) | Summary Judgment Deadline |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO STRIKE</u>**

**<u>BACKGROUND</u>**

Yvonne Gipson ("Gipson") is a former Home Mortgage Consultant (a/k/a loan originator) who worked for Wells Fargo until her termination on July 12, 2004. During her employment, Gipson specialized in "renovation loans," which are essentially home improvement loans for which approved borrowers are given staged completion "draws"for work performed on their property by contractors. In or around November of 2003, the company's Minneapolis based National Draw Center– which administers draw loan payouts– detected several "red flags" in connection with numerous renovation loans in the District of Columbia during a small time period which appeared to have the same builder-contractor, consultant, inspector, appraiser, and real estate agent. Many of these loan files were ultimately found to have fraudulent wage and income statements and other misrepresentations concerning occupancy and other concerns. During this time it was discovered that the same home mortgage consultant– Yvonne Gipson–

was responsible for originating all of these suspect loans.

An internal investigation was thereafter launched by the company's Fraud Risk Management Group – based in Des Moines – during which Gipson was interviewed in connection with her role in these loans.  During this investigation, Gipson *admitted* that she had maintained loan files which contained fraudulent information, and that she engaged in improper practices which likely caused or contributed to the existence of fraudulent information in the loan files, including accepting income and occupancy documents from interested third parties by facsimile – instead of the borrowers themselves– which is a violation of company policy since this practice directly contravenes guidelines propagated by the Federal Housing Administration ("FHA") governing renovation loans.[1]  Gipson was terminated for violation of company policies.

The present case involves a very basic claim of retaliation pursuant to the District of Columbia Human Rights Act attributable to her discharge.[2] (Case No. 05-cv-1184).  Despite Gipson's admissions and the undisputed evidence that she violated policies, Gipson is attempting to claim that the company's National Draw Center, Fraud Risk Management Group, and every individual involved in the investigation which ultimately led to her termination retaliated against her because she had filed a lawsuit many years earlier alleging discrimination in promotion.

---

[1]    Based on Gipson's own admissions and the undisputed record that she did – in fact– violate company policy in this regard, Wells Fargo anticipates moving for summary judgment in the coming weeks.

[2]    Gipson is also attempting to prosecute a claim for discriminatory and retaliatory non-selection to the position of Branch Manager in 1998. (Case No. 00-cv-2865).  The cases have been consolidated.

Discovery closed on June 14, 2006.

On or about May 30, 2006, Gipson inexplicably designated an individual by the name of Frederic C. Douglas, Jr., as her expert in this case. (*See* Ex. 1, "Expert Analysis of Frederick C. Douglas, Jr."). As will be discussed below, Mr. Douglas is not a competent witness, and his proposed testimony is altogether irrelevant to the claims in this case and would further present a significant danger of confusion to the trier of fact should this case reach trial. Wells Fargo moves that he be stricken as an expert in this case.

## STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides that it will only be permitted if it "will assist a trier of fact to understand the evidence or to determine a fact in issue." This is often informally referred to as a "helpfulness" standard. <u>Scales v. George Washington University</u>, 1993 U.S. Dist. Lexis 10692 (D.D.C. 1993)(*citing* FRE 702 note 14)(copy attached). This Circuit has long recognized that the twin requirements for the admissibility of expert testimony are relevance and evidentiary reliability. *See* <u>Ambrosini. v. LaBarraque</u>, 101 F.3d 129 (D.C. Cir. 1996); <u>Minebea Co. v. Papst</u>, 2005 U.S. Dist. Lexis 11946 (D.D.C. 2005)(copy attached). In terms of relevance, the Court must determine whether the proffered testimony is sufficiently tied to the facts of the case and that it will aid a jury in resolving a fact dispute. <u>Minebea</u>, *supra*, at * 4 (*citing* <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993)).

**ARGUMENT**

I.

Wells Fargo asks the Court to preclude the proposed expert testimony of Frederick C. Douglas, Jr., on the grounds that his testimony is wholly improper and irrelevant to this simple employment discrimination suit, would not assist a trier of fact in resolving any issue, and, in fact, would pose significant danger of confusion to the jury should this case survive summary judgment and proceed to trial. Even a cursory review of the findings and analysis of Mr. Douglas reveals that they have no meaningful bearing on the facts of this case and are well beyond the scope of proper expert inquiry. While Mr. Douglas' working history with the federal government may afford him limited specialized knowledge in the field of FHA rules and regulations in the mortgage industry[3], it is clear that his proffered opinions are irrelevant, and otherwise fail to meet the express requirements of Federal Rule of Evidence 702, which only permit testimony from a competent expert if: (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of this case. Id. As will be discussed below, Mr. Douglas' expert

---

[3]    Wells Fargo by no means concedes Mr. Douglas is even qualified to serve as an expert. A cursory review of his resume reveals that he is currently employed as a consultant and mortgage loan originator, and has no higher degree beyond that of bachelor of science. (*See* Ex. 3, Resume). Although he previously held several mid-level to high level government positions for the FHA, Department of Agriculture, and Resolution Trust Corporation, this background by no means makes him qualified to address the few issues in this case, particularly given his complete lack of understanding concerning the policies and procedures utilized by Wells Fargo. The fact remains that this simple employment discrimination case does not even require an expert. Gipson simply wishes to call Mr. Douglas– who is also a mortgage originator– to give his opinion that her discharge was unfair. This is not the proper subject for expert testimony.

findings fall well short of these standards.

II.

At the outset, this Court need look no further than Gipson's retention agreement with Mr. Douglas to determine that the scope of his requested analysis and opinions is completely inappropriate. (*See* Ex. 2, Retention Agreement).  Specifically, Mr. Douglas was asked to provide his opinion on four separate subjects, those being (1) whether Gipson's actions contravened FHA guidelines; (2) what action, if any, the FHA could be expected to impose for violating these guidelines; (3) what disciplinary actions could be expected to be taken against Gipson in "private industry" for her actions; and (4) whether a loan originator "should reasonably be expected to recall specific loan applications" in connection with employment. Id.  None of these areas are the grounds for proper expert testimony in this case.

In terms of the first issue, Gipson was terminated in July of 2004 for violating Wells Fargo's policies, including her actions in accepting faxed income and occupancy documents from interested third party realtors in connection with her loans, in violation of applicable FHA regulations.   Notably, neither Gipson nor her proposed expert even dispute that her actions did – in fact– violate FHA guidelines. (*See* Ex. 1, Expert Report, p. 5 – "It is correct that FHA guidelines require that original documents such as these be provided from potential borrowers."). Given that this point is *not* in dispute, expert testimony would not assist a trier of fact, and certainly would not aid a jury in resolving a disputed issue of material fact.

7

In his expert report, however, Mr. Douglas next opines that "Wells Fargo's failure to obtain originals of the foregoing documents directly from borrowers would not, in FHA practice and procedure, provide grounds for taking action against the individual mortgage originator or Wells Fargo." (Id. at p. 6). This statement, unfortunately, is misleading and requires context. By way of background, as an approved FHA lender, Wells Fargo as a company is required to be "bonded" as a means of insuring borrowers from wrongful acts of the company or its employees. Since the company is subject to FHA oversight in this regard, it is true that either the company or its employees can be subject to various government sanctions for non-compliance. However, the issue in this case is not the likelihood of whether or not the FHA or the Department of Housing and Urban Development ("HUD") would take governmental action against Gipson or Wells Fargo for her conduct. To the contrary, Gipson in this case was terminated for violating Wells Fargo's policies, which included violating governmental regulations in the handling of her loans. Whether Gipson would have been subject to governmental censure or other penalty had she been reported to the FHA is completely beside the point. Were it otherwise, Wells Fargo would not be free to discipline its employees for violating government regulations unless the government itself takes action against the company for the employees' conduct.

Mr. Douglas' findings on this point also contravenes the requirements of Federal Rule of Evidence 702, which requires testimony to be the product of reliable principles and methods. In this case, the primary issue surrounding discharge is whether Gipson accepted faxed documents from third party realtors. While Mr. Douglas– who has familiarity with FHA rules and

regulations– acknowledges that it is a violation of FHA to engage in this practice, he completely *deviates* from reliable expert methodology in suggesting that a trier of fact should nevertheless ignore the FHA regulations since it may or may not be common for other loan originators in the industry to also violate these regulations. This is completely inappropriate and is certainly not the subject of proper expert inquiry. The so-called "everyone else does it" defense is for Gipson herself to attempt to make, and is not within the province of an expert. As noted above, this proposed testimony is completely irrelevant and does not aid Gipson in her attempt to establish her claims in this case. Moreover, it is likely that testimony of this nature would present the danger of needlessly confusing the jury. *See* Fed.R.Evid. 403. This is particularly true if the jury were to conclude that a private lender should not terminate an employee unless the company was facing certain penalties or sanction by the federal agencies governing its' lending practices. In sum, this proposed testimony is irrelevant, confusing, needless, presents a classic red herring, and must be stricken.

III.

Wells Fargo next takes issue with the opinion expressed by Mr. Douglas that the decision to terminate Gipson for violating policies is somehow harsher than the discipline which could be expected by other lending companies in private industry. This is by far the most ridiculous, objectionable, and inappropriate proffer in the report. Mr. Douglas' belief that it is "highly unlikely that an approved FHA lender like Wells Fargo... would terminate a successful residential mortgage originator" for these acts is well beyond the scope of proper expert testimony. (Id. p. 8).

9

Not only is this statement tantamount to a legal conclusion, it is completely speculative and

unsupported by any evidence of practices by other companies in the industry.[4]  It is well settled

that expert testimony that consists of legal conclusions cannot properly assist a trier of fact and is

not admissible. Burkhart v. WMATA, 112 F.3d 1207 (D.C. Cir. 1997).  Similarly, Mr. Douglas'

sentiments that Gipson was not "derelict" in her duties is equally inappropriate.  Expert

testimony is intended to assist a jury to do its work, not to do the jury's work for it.  Steele v.

D.C. Tiger Market, 854 A.2d 175 (D.C. 2004).  An expert who undertakes to tell a jury what

result to reach usurps the primary role of the trier of fact. Id.

IV.

Wells Fargo next takes issue with the various opinions expressed by Mr. Douglas that

Gipson should bear no responsibility for her actions and the fraudulent documents contained in

her loans files.  Throughout this litigation, Gipson has attempted to 'shift the blame' for her

actions by asserting that Wells Fargo's processing or underwriting departments, and not her, were

responsible for breakdown which led to the fraudulent loan files.  Predictably, even though she

admits to wrongdoing, Gipson takes no responsibility for the actions which led to her discharge

or her own loan files.  Instead, she essentially asserts that blame for the situation lies more with

---

[4]    In this jurisdiction, courts have long refused to sit as super-personnel boards and
"second-guess" an employer's personnel decisions absent a demonstrably discriminatory motive.
Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180 (D.C. Cir. 1996).  One can
only imagine the state of the law if an employee challenging a termination or other discipline by
a private employer could assert discrimination by vaguely asserting that other companies in the
same industry would not have administered the same discipline for the same offense.  This,
however, is precisely what Gipson seeks to accomplish with her expert in this case.

10

underwriting or processing than her.   To this end, Mr. Douglas once again offers his belief that

"private mortgage lenders invariably have processing and underwriting departments whose

function is to ensure that loans are properly documented..." (Id. p. 8).  Further, Mr. Douglas

offers yet an additional excuse that "a mortgage originator who is actively engaged in multiple

transactions is not expected to compare information on multiple loan applications" (p. 9).  In

other words, Ms. Gipson was too busy to pay attention to the documents she placed in her loan

files.

      Once again, this proposed testimony is by no means probative of any issue in this case

and certainly does not fall within the province of a so-called expert.  The record in this case

reveals that Gipson engaged in actions which caused or contributed to procurement of fraudulent

loans, whether by improperly accepting income and occupancy documents from parties other

than the borrowers, or by turning a blind eye towards multiple questionable transactions.  The

record in discovery has also revealed that loan originators are – in fact– responsible for

documents contained in their files and play a crucial role in the processing of loans.  While Mr.

Douglas *infers* that the "conventional mortgage industry" views document procurement as being

the responsibility of underwriters and not originators (Ex. 1, p. 10), it is clear that his opinions in

this regard are not "based upon sufficient facts or data" as mandated by Federal Rule of Evidence

702.  While Mr. Douglas attempts to exonerate Gipson for her actions in handling the loan files,

his report makes clear that he has not even reviewed the numerous loan files maintained by

Gipson which were found to contain fraudulent documents.[5]  Moreover, while Mr. Douglas

offers that other companies in the mortgage industry may affix more blame with underwriting

than the originators themselves, this is also not based on sufficient facts and data[6], let alone an

understanding of the record in this case.  As noted above, loan originators at Wells Fargo are

responsible for documents in their loan files, and one deponent recently described the role of an

originator as being "the first line of defense" against fraud, a fact which Gipson certainly knew

over her eight years of employment with the company.   The proposed testimony in this regard is

irrelevant, unreliable, and would not assist a jury in resolving any disputed issue of fact.   Mr.

Douglas should be stricken as an expert in this matter.

V.

Alternatively, in the event this Court is inclined to allow even part of Mr. Douglas'

testimony at this trial of this case, Wells Fargo would request thirty (30) days to designate a

rebuttal expert to counter any testimony which may be permitted following this Court's ruling on

this issue.

---

[5]    All of these loan files were produced in discovery and the individual responsible for
investigating the issues pertaining to these files and recommending Plaintiff's termination –
Loyce Gentry– has been deposed.  Notably, Plaintiff posed no questions to Ms. Gentry on any
fraudulent documents found in any of the eighteen or so files reviewed..

[6]    As noted throughout, Mr. Douglas' expert analysis does not even express a
familiarity with Wells Fargo's policies, practices, and inner-workings, and fails to meet the
express dictates of Federal Rule of Evidence 702.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant requests that Mr. Frederick C. Douglas, Jr., be stricken as an expert witness in this matter.

Respectfully submitted,

**KHAN ROMBERGER PLLC**

/s/

BY:_____

Karen A. Khan, Esquire
D.C. Bar No. 455297
Timothy W. Romberger, Esquire
D.C. Bar No. 458225
1025 Connecticut Avenue
Suite 1000
Washington, D.C.  20036
(202) 828-1243
**ATTORNEYS FOR DEFENDANT**

Dated:  June 16, 2006