UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YVONNE GIPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 05-1184 (JMF) |
| | ) Civ. Action No. 00-2865 (JMF) |
| WELLS FARGO | ) |
| BANK, N.A., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S FIRST MOTION IN LIMINE
(Evidence Concerning the Termination of Cedric Johnson)**

Defendant's Opposition to the exclusion of evidence concerning the termination of Cedric Johnson misses the choice it faces: either Johnson is out or the nine home mortgage originators who were Mr. Frohn's third line subordinates but were not terminated are in. In truth, the only proper comparator is Charles Oyetimbo and the other Home Mortgage Consultant assigned to the Greenbelt Branch Office, and Wells Fargo's discipline of other Home Mortgage Consultants is inadmissible.

1

**I.**

Wells Fargo's Opposition is based on two supposedly decisive factors that purportedly differentiate Johnson from all other comparators except Ms. Gipson. The first is his focus on mortgage loans used for home renovation. The second is his supposed management by Brian Foss. Neither premise is true. The second would be irrelevant even if it were.

A.   Home Mortgage Originators And Others Subject to Identical Disciplinary Standards

The parties reached a compromise to a discovery dispute over the production of evidence concerning possible comparators to Ms. Gipson. Part of that solution entailed the preparation and production of chart of fraud investigations and discipline imposed as a result of those investigations from 2003 forward. That complete chart is referred to in this Reply as Exhibit 2; it was originally filed under seal as Exhibit 4 to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

By Wells Fargo's own admission, every single employee identified on the disciplinary chart was "subject to the same standards of conduct and adherence to policy at Wells Fargo" (Exh. 2; Gentry Dep. at 64). Six were identified as Home Mortgage Consultants and one as a Private Mortgage Banker. Again by Wells Fargo's admission, "in this instance they are interchangeable, yes" (Gentry Dep. at 64). The sole difference is in the wealth of a potential borrower (Id. at 63). One of the other employees was identified as a Branch Sales Manager; the remaining one as a junior Home Mortgage Consultant (Exh. 2). Again, these too were positions held the same standards as Johnson and Ms. Gipson (Id. at 64).

In sum, Wells Fargo's designation of a loan originator as a Home Mortgage Consultant or Private Mortgage Banker is of no consequence in terms of disciplinary standards (Gentry Dep. at 63-64). Neither is the type of loan that an employee originates (Id.).

      B.      The Absence Of Foss In Ms. Gipson's and Johnson's Supervisory Chain

Ms. Gipson was assigned to Wells Fargo's Branch Office in Greenbelt, Maryland; Mr. Johnson to the Branch in Annandale, Virginia (Exh. 2 at 1, 3). Despite this difference in assignments, Wells Fargo relies on Mr. Foss's supposed presence in their supervisory chains as decisive factors which make only Ms. Gipson and Johnson comparators. Wells Fargo's argument is both untrue and irrelevant.

Mr. Foss had no involvement in the decision to terminate Ms. Gipson (Foss Dep. at 46-47). And Mr. Frohn has no reason to believe that Foss was involved in Johnson's termination either (Frohn Dep. at 154-57, 176). Thus, even were Mr. Foss a supervisor of both Ms. Gipson and Johnson – which he was not – he would be an irrelevant factor in their termination.

Stephen Harper, the Greenbelt Branch Manager, admitted that he was Ms. Gipson's first line supervisor (Harper Dep. at 32; accord Natali Dep. at 20). Mr. Frohn admitted this, as well (Frohn Dep. at 28). He also admitted that Johnson's first and second line supervisors were Laurie Thurston McDonald and John Goulding (Frohn Dep. at 155-56). Mr. Natali, Ms. Gipson's second line supervisor, played no role in Johnson's supervision (Natali Dep. at 38-40).

Wells Fargo's servicing HR specialist also identified Mr. Natali and Mr. Frohn as Ms. Gipson's second and third line supervisors; she did not include Mr. Foss in her managerial chain (Pattison Dep. at 65-66). Mr. Foss himself testified that Mr. Harper, Wells Fargo's Manager of the Greenbelt Branch, was Ms. Gipson's "solid line" supervisor and "handled … disciplinary actions" (Id. at 24). His sole function was to provide "sales support" and that is why his role ran on a "dotted line" to Ms. Gipson (Id.). That is why Mr. Natali and Mr. Harper, but not Mr. Foss, were responsible for Ms. Gipson's annual performance appraisals (Exh. 3). In sum, Mr. Foss was not a supervisor of Ms. Gipson and Johnson in any relevant sense of the word.

## II.

Despite Wells Fargo's contention to the contrary, Mr. Frohn has no recollection which company policies Johnson violated (Frohn Dep. at 157). Neither does he know who, other than himself, participated in the decision to terminate Johnson (Id.). With the dissimilarity in Ms. Gipson's and Johnson's chain of command, the absence of evidence concerning the company policies Johnson breached, and the absence of evidence concerning who made the decision to terminate him, he and Ms. Gipson are not situated in the "relevant aspects of" their employment. Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1554 (D.C. Cir. 1997).

In sum, Ms. Gipson and Johnson share nothing in common except that Mr. Frohn was the third line supervisor of both. But if this one commonality becomes the standard for admissibility, then nine other cases involving home mortgage originators who were subject to fraud investigations while under Mr. Frohn's third line supervision are also admissible.

There were two HMC's in the Greenbelt Branch besides Ms. Gipson who were subject to investigation (Exh. 2 at 1, 6-9). Charles Oyetimbo "originated loans that have been identified as fraudulent and possibly as part of a fraud ring" (Exh. 2 at 1). Despite the fact that Mr. Oyetimbo was apparently the conduit of fraud, Mr. Frohn only "Counseled" him (Exh. 2 at 1, 6). FH[1] was the other Greenbelt HMC who underwent a fraud investigation (Exh. 4 at 1). She was "suspected of" and admitted to "signing son's name to draw requests on renovation loans … without a power of attorney" (Id.). Despite engaging in forgery, Ms. H was given a written warning (Id.).

---

[1]   In the interest of protecting their privacy, employees whose the identities, investigations, and discipline have not been identified on the public record by Wells Fargo are referred to by their initials.

Three other Wells Fargo employees outside of Greenbelt but in the Southern Maryland Area engaged in fraud, yet none was terminated. CB was only counseled "that more attention is required to data integrity" despite being "suspected of involvement in income misrepresentation" (Exh. 2 at 2). LAB was merely "coached" because, as was true in the case of Ms. Gipson, "no true fraud was identified" (Id. at 1). EJ was given "additional training on proper document procurement," not terminated (Id.).

Other Wells Fargo employees in Region 12 who did not work in Ms. Gipson's Branch, the Southern Maryland Area under Mr. Natali, or under the same immediate supervisors as Ms. Gipson, were subject to investigation and disciplined in the same time period. None was terminated. LB, an HMC who was investigated when "[f]our cases of fraudulent documentation were identified .. provided by the same referral source," was only "Counseled" (Exh. 2 at 1). DH was counseled despite being "suspected of income misrepresentation by advising borrower to provide false information" (Id. at 2). PD was also counseled despite being suspected of abuse of a specialized loan program (Id. at 3). SP was "suspected of involvement in occupancy misrepresentation" and "given coaching" (Id.). DV was counseled for "suspected … income misrepresentation" (Id. at 3).

The short of this matter is that Wells Fargo faces a difficult choice. If commonality of third line supervisors is the standard for determining the admissibility of potential comparator evidence, then the treatment of eight other home loan originator and one supervisor originator are admissible (Exh. 2). The evidence of their treatment would make it impossible for Wells Fargo to justify terminating Ms. Gipson by its treatment of Johnson. That being said, plaintiff respectfully submits that Johnson's termination is irrelevant; <u>unless</u> the Court accepts Wells

5

Fargo's argument that he is a comparator to Ms. Gipson, in which case so are nine other Wells Fargo employees under Mr. Frohn's third line supervision.

Respectfully submitted,

/s/
_____
Robert C. Seldon, Esq.
 D.C. Bar No. 245100

/s/
_____
Molly E. Buie, Esq.
 D.C. Bar No. 483767

Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 305
Washington, D.C. 20004
(202) 955-6968

Counsel for Plaintiff