### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| YVONNE GIPSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 00-2865 (JMF)** |
| | ) | **Civil Action No. 05-1184 (JMF)** |
| WELLS FARGO N.A., | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### MEMORANDUM OPINION

_____In her amended complaints in these consolidated cases,[1] plaintiff alleges that her

employer discriminated and retaliated against her on the basis of race, sex, and age in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 et seq., the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and 42 U.S.C. § 1981,

and then retaliated against her in violation of the D.C. Human Rights Act ("DCHRA"), D.C.

Code. Ann. §§2-1402.01, et seq.[2]  Both cases have been referred to me for all purposes including

trial.  I now resolve Defendant's Motion for Summary Judgment ("Defs. Mot.") on all claims in

the consolidated cases pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  For the

reasons set forth below, defendant's motion will be denied.

---

[1]  Plaintiff filed the original complaint in this action against Wells Fargo Corporation and other related corporate entities on November 29, 2000.  While pending, plaintiff filed an additional complaint against Wells Fargo Home Mortgage, Inc., and related corporate entities in D.C. Superior Court, which was removed to this court on June 14, 2005.  The two cases were consolidated on September 1, 2005.  On March 21, 2006, with agreement by the parties, the correct named defendant in both cases was ordered Wells Fargo Bank, N.A.

[2]  All references to the United States and District of Columbia codes are to the most recent electronic versions available in Westlaw and LEXIS.

## BACKGROUND

Plaintiff, Yvonne Gipson, was formerly employed by what is now known as Wells Fargo Bank, N.A. ("Wells Fargo"), as a Home Mortgage Consultant and Renovation Specialist, or loan originator.  In November 2000, plaintiff brought suit against Wells Fargo, alleging discrimination and retaliation on the basis of age, sex, and race when she was not selected for promotion to the position of Branch Manager in a new branch of Wells Fargo to be located in Washington, D.C. As that suit was pending, plaintiff brought suit in July 2005, alleging retaliation when she was discharged by Wells Fargo on July 12, 2004.

## MATERIAL FACTS NOT IN DISPUTE

1. In 1998, under supervision of Area Manager Charles Vance, Wells Fargo opened a new branch office in Washington, D.C., which required the hiring of a Branch Manager to lead the office.  Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Defs. Mem.") at 27.  At that time, Mr. Vance advertised the position internally and externally.  Id.

2. External candidates were required to submit resumes directly to Mr. Vance, and later provide applications for employment, while internal candidates were not required to re-submit job applications.  Id. at 27-28.  After an initial screening of qualified candidates and initial interviews, Mr. Vance selected three finalists for consideration in additional interviews to be conducted by Mr. Vance and his direct supervisor, Regional Manager Mr. Cliff Frohn, who would also head the new office.  Id. at 28; Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pls. Opp.") at 7.  The three finalists selected and interviewed by Mr. Vance and Mr.

Frohn were John Settles, Kenneth Brown, and plaintiff.  Defs. Mem. at 28.

3.    At the time of selection, plaintiff, an African American, worked as a Home Mortgage

Consultant ("HMC") and Renovation Specialist for Wells Fargo and was fifty-eight years

old.  See Pls. Opp. at 25.  She had been with Wells Fargo since 1996.  Defs. Mem. at 4.

Also at that time, Mr. Vance served as plaintiff's second-line supervisor, and Mr. Frohn

as plaintiff's third-line supervisor.  Pls. Opp. at 6.

4.    At the time of selection, Mr. Settles, the individual ultimately selected for the position,

also an African American, worked for National City Mortgage as Rehab and non-profit

specialist and was twenty-nine years old.  See Pls. Opp. at 26; Defs. Mem., Ex. 16, Decl.

Vance, Ex. 2.

5.    In October 1998, prior to publication of the branch manager position opening, plaintiff

entered into an Agreement and Release to resolve an internal complaint of discrimination

against Wells Fargo, specifically relating to claims against Mr. Vance.  Pls. Opp. at 6.

6.    Mr. Vance and Mr. Frohn interviewed the candidates together, took separate notes on

each interview, ranked the applicants, and compared notes.  Pls. Opp. at 8.  The interview

notes of Mr. Frohn are gone, and the interview notes of Mr. Vance are limited.  Id.; Defs.

Mem., Ex. 16, Decl. Vance, Ex. 1.

7.    Following the interviews, Mr. Vance offered the position to Mr. Settles.  Defs. Mem. at

29-30.

8.    In 1999, plaintiff transferred to the Greenbelt office of Wells Fargo, where she reported

directly to Greenbelt Office Branch Manager Stephen Harper.  Pls. Opp. at 9.

9.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

3

       Commission ("EEOC") on November 3, 1999, alleging retaliation in connection with her

       non-selection to the position of Branch Manager.  Defs. Mem., Ex. 17.

10.     On November 29, 2000, plaintiff filed her first lawsuit against Wells Fargo in connection

       with her discrimination and retaliation claims on the basis of race, sex, and age.  Defs.

       Mem. at 1.

11.     As the suit was pending, between 1999 and 2004, plaintiff continued working for Wells

       Fargo as an HMC, or loan originator.  See Pls. Opp. at 9.

12.     In November 2003, Wells Fargo's California-based National Renovation Draw Center,

       which administers and disburses draw loan payouts for renovation loans (the area of

       Gipson's specialty), detected "possible problem files" concerning loans originated by

       Gipson.  Defs. Mem. Ex. 26.  The "red flags" dealt with loans administered by plaintiff in

       the District of Columbia during a brief period of time with one builder-contractor, Teka

       Construction.  Defs. Mem. at 10.

13.     Wells Fargo's Fraud Risk Management Department, based in Iowa, began an internal

       investigation regarding Gipson's activities in connection with the flagged loans.  Defs.

       Mem. at 11.

14.     A preliminary review of the matter by the Fraud Risk Management Department led to an

       interview conducted by fraud examiner Lloyce Gentry, who also reviewed Gipson's loan

       files.  Pls. Opp. at 11.  At a minimum, the investigation of Ms. Gentry concluded that

       Gipson had violated Wells Fargo's policy regarding acceptance of faxed documents.  Id.

15.     An on-site interview of Gipson was conducted by Ms. Gentry on July 9, 2004.  Statement

of Facts, ¶ 34.[3]  Following the interview, a conference call took place between Ms. Gentry and other members of the Fraud Risk Committee, which generally meets to discuss issues concerning fraud and to make recommendations regarding actions to take on cases which the Fraud Risk Management Department is investigating.  Statement of Facts, ¶¶ 36-37. Those involved in the conference call included Lloyce Gentry, Tamara Pattison, Ann Tankus, and Denise Brennan.  Defs. Mem. at 15.

16. After discussing termination of Gipson, Ms. Pattison, the Human Resources representative on the Fraud Risk Committee, contacted Mr. Frohn to recommend termination.  Pls. Opp. at 13; Defs. Mem. at 15.

17. On July 12, 2004, Gipson was terminated.  See Defs. Mem. at 8.  At the time of her termination, Gipson's second-line supervisor was Mr. Leo Natali, Area Manager for Southern Maryland, and her third-line supervisor was Mr. Frohn, who continued in his position as Regional Manager.  Pls. Opp. at 9.  Her termination was communicated to her in a meeting with Mr. Natali and Mr. Brian Foss, Gipson's Renovation Sales Manager. Statement of Facts, ¶ 41.

18. Plaintiff initiated a second suit in D.C. Superior Court against Wells Fargo on May 25, 2005, alleging retaliation in violation of the DCHRA.  Defs. Mem. at 2.  That case was removed by Wells Fargo to this court on June 14, 2005.  Id.  The cases were consolidated at the agreement of the parties on March 21, 2006.

---

[3]  All references to the Statement of Facts are to the Defendant's proposed Statement of Facts to which Plaintiff admits or agrees in her Response.

**DISCUSSION**

I.    *Legal Standards of Review*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if, on the basis of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There exists a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). When ruling on such a motion, the court views the evidence in the light most favorable to the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

Gipson alleges discrimination and retaliation on the basis of sex and race under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, as well as on the basis of age under the ADEA. She further alleges retaliation under the DCHRA. The legal standard governing Title VII cases applies equally to claims brought under section 1981, the ADEA, and the DCHRA. See Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395, 1411-12 (D.C. Cir. 1988) (applying the legal standard of Title VII claims to claims brought under section 1981); Hall v. Giant Food, Inc., 175 F.3d 1074, 1077 (D.C. Cir. 1999) (applying the legal standard of Title VII claims to claims brought under the ADEA); Howard Univ. v. Green, 652 A.2d 41, 45 (D.C. 1994) (applying the legal standard of Title VII claims to claims brought under the DCHRA).

In cases where, as here, there is no direct evidence of unlawful discrimination or retaliation, courts apply the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Holbrook v. Reno, 196 F.3d 255, 260 (D.C. Cir. 1999). Pursuant to

6

McDonnell Douglas, a plaintiff has the initial burden to establish a <u>prima facie</u> case of discrimination by a preponderance of the evidence.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  To establish a <u>prima facie</u> case of unlawful discrimination under Title VII in a non-selection claim, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position she sought but was rejected; and (3) the employer either filled the position with another applicant or continued to try to fill it.  <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006).  To establish a <u>prima facie</u> case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) she subsequently was subjected to an adverse action by her employer; and (3) there was a causal connection between the two events.  <u>Mitchell v. Baldrige</u>, 759 F.2d 80, 86 (D.C. Cir. 1985); <u>Kalinoski v. Gutierrez</u>, 435 F. Supp. 2d 55, 62 (D.D.C. 2006).  In both cases, a <u>prima facie</u> case creates a rebuttable presumption of discrimination or retaliation.

Once the plaintiff establishes a <u>prima facie</u> case, the burden shifts to the defendant to produce evidence of legitimate, non-discriminatory reason for its actions.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  The burden on the employer, however, is merely one of production; the employer "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  <u>Texas Dep't Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254-55 (1981).  At that point, the presumption of discrimination "simply drops out of the picture." <u>Burke v. Gould</u>, 286 F.3d 513, 520 (D.C. Cir. 2002) (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511 (1993)).

With the presumption gone, the burden shifts back to the plaintiff to show that the

employer's stated reason was a pretext for discrimination or retaliation.  Reeves, 530 U.S. at 143.

To survive summary judgment, "the plaintiff must show that a reasonable jury could conclude

from all of the evidence that the adverse employment decision was made for a discriminatory

reason."  Holcomb, 433 F.3d at 896-97 (quoting Lathram v. Snow, 336 F.3d 1085, 1088 (D.C.

Cir. 2003)).  In this context, "all of the evidence" means "any combination of (1) evidence

establishing plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the

employer's proffered explanation for its actions; and (3) any further evidence of discrimination

that may be available to the plaintiff, such as independent evidence of discriminatory statements

or attitudes on the part of the employer."  Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1289 (D.C.

Cir. 1998) (en banc).

Plaintiff in this case alleges two adverse employment actions: (1) non-selection for a

branch manager position, which would have resulted in a significant promotion for plaintiff; and

(2) termination of employment.  Plaintiff offers several unlawful motives for these actions.  In

her non-selection claim, plaintiff alleges (1) discrimination based on age, sex, and race; and (2)

retaliation for prior protected activity in filing a complaint of discrimination.  In the termination

claim, plaintiff alleges only retaliation for prior protected activity.  The ultimate questions for this

Court are whether plaintiff has established a prima facie case in each instance and, if so, whether

a reasonable jury could conclude that any of the defendant's proffered explanations for these

actions are pretextual and thereby infer unlawful discrimination or retaliation.


II.    *Analysis*

A.    NON-SELECTION CLAIM

1.    *A* Prima Facie *Case of Discrimination and Retaliation*

a.    Gipson's *prima facie* case of discrimination is not in dispute.

To establish a prima facie case of discrimination, Gipson must show that (1) she is a

member of a protected class; (2) she suffered an adverse employment action; and (3) the adverse

action occurred under circumstances that give rise to an inference of discrimination.  Stella v.

Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002).  Gipson was a member of several protected classes

as an African American, fifty-eight-year-old woman.  She was one of three final candidates for

the position of Branch Manager, and that position was ultimately filled by Mr. Settles, a twenty-

nine-year-old African American male.  Wells Fargo does not dispute Gipson's prima facie case

of discrimination relating to her non-selection for the Branch Manager position.  See Pls. Mem.

at 26, n.20.

b.    Gipson established a *prima facie* case of retaliation.

To establish a prima facie case of retaliation, Gipson must show that (1) she engaged in a

protected activity; (2) she subsequently was subjected to an adverse action by her employer; and

(3) a causal connection exists between the two events.  Mitchell, 759 F.2d at 86; Kalinoski, 435

F. Supp. 2d at 62.  Wells Fargo argues Gipson's prima facie case for retaliation fails on the third

prong in that Gipson cannot establish a causal connection between her protected activity and non-

selection.  Defs. Mem. at 35-36; Defendant's Reply Memorandum in Support of Its Motion for

Summary Judgment ("Defs. Reply") at 23-24.  Wells Fargo emphasizes that Gipson's "prior

complaints" of discrimination against Mr. Vance had been resolved by August of 1998, as stated

in her settlement letter in October of 1998, and therefore the selection decision in January of

1999 creates "too great . . . a temporal disparity to – standing alone – infer causation."[4]  Defs.

Reply at 24; see also Defs. Mem., Ex. 13.

The causal connection in a claim of retaliation "may be established by showing that the

employer had knowledge of the employee's activity, and that the adverse personnel action took

place shortly after that activity."  Mitchell, 759 F.2d at 86; see also Holcomb, 433 F.3d at 903.

Defendant points to courts in this circuit that have followed a three-month rule when establishing

causation on the basis of temporal proximity alone.  Willingham v. Gonzales, 391 F. Supp. 2d

52, 61 (D.D.C. 2005); Gustave-Schmidt v. Chao, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004);

Buggs v. Powell, 293 F. Supp. 2d 135, 148 (D.D.C. 2003).  Title VII and related laws, however,

do not provide a hard and fast rule that adverse employment actions must fall within a specified

time frame for a retaliation claim to be actionable.  Furthermore, at the prima facie stage of a

retaliation claim, "a plaintiff's burden is not great."  Holcomb, 433 F.3d at 903.

This Court cannot conclude, as a matter of law, that plaintiff fails to make out a prima

facie case of retaliation on her non-selection claim.  Irrespective of whether plaintiff's internal

claim of discrimination was "resolved" in August 1998, as stated in her letter agreement, or on

October 8, 1998, when the settlement and payment were executed, the date of that resolution is

not dispositive of the possibility of retaliation in Gipson's non-selection.  Plaintiff provides more

evidence than mere temporal proximity to show possible retaliation in her non-selection.  At the

time of her interview, Mr. Vance made explicit reference to her discrimination complaint in that

---

[4]  Wells Fargo mistakenly believes the "temporal gap" at issue is longer than actually is
the case.  Though repeatedly pointing to the "six-month period" between August 1998 and
January 1999 both in its Motion and Reply, Wells Fargo should find upon recalculation that the
span of time from August to January is in fact five months, not six.

he did "not see how" Gipson could work for him following her complaint of discrimination against him specifically. Pls. Opp. at 31. Clearly, Gipson's internal complaint remained on the mind of her interviewer and target of her charge regardless of whether the resolution of the complaint took place in August or October. Such a verbalized awareness coupled with temporal proximity preclude a finding of summary judgment for failure to make out a <u>prima facie</u> case of retaliation.

      2.    *Proffer and Pretext*

          a.    <u>Wells Fargo provides a justifiable proffer.</u>

     With a <u>prima facie</u> case of discrimination not in dispute and with Gipson's establishment of a <u>prima facie</u> case of retaliation, Wells Fargo must provide a legitimate, non-discriminatory justification for its selection of Mr. Settles over plaintiff. In responding to both claims, Wells Fargo states the choice for Mr. Settles as Branch Manager resulted from the interviews by Mr. Vance and Mr. Frohn of the top three candidates and the ultimate decision that Mr. Settles was the most qualified candidate for the position. Defs. Mem. at 29. Specifically, Mr. Vance appreciated the "leadership abilities and potential" of Mr. Settles, and he was especially impressed by the selection of Mr. Settles to the National MBA Future Leader Program by his former employer. <u>Id.</u> Wells Fargo claims that Mr. Vance's decision was further influenced by Mr. Settles' management background and experience in the mortgage industry. <u>Id.</u> at 30. The explanation Wells Fargo provides adequately satisfies the minimal burden of production to raise a genuine issue of fact as to whether it discriminated against the plaintiff. <u>See</u> <u>Burdine</u>, 450 U.S. at 254-55. To survive summary judgment, Gipson must therefore produce evidence sufficient for a jury to infer that Wells Fargo's failure to select her for Branch Manager was motivated by

discrimination and retaliation.

        b.        Gipson provides evidence of pretext based on qualifications.

Rebutting a proffered explanation for non-selection based on qualifications is often more difficult than with other proffers, largely because governing precedent requires courts to "respect the employer's decision to choose among qualified candidates." Fischbach v. D.C. Dept. of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996). In other words, a court's role is not to reexamine promotion decisions when an employer is faced with a difficult decision between two qualified candidates, especially when no other evidence suggests a discriminatory or retaliatory reason played a part in the decision. See Stewart v. Ashcroft, 352 F.3d 422, 430 (D.C. Cir. 2003). The D.C. Circuit has stated that, when confronted solely with qualifications evidence, a factfinder may infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job." Aka, 156 F.3d at 1294. The Circuit went on to explain that if

>       a factfinder can conclude that a reasonable employer would have found the
>       plaintiff to be significantly better qualified for the job, but this employer did
>       not, the factfinder can legitimately infer that the employer consciously
>       selected a less-qualified candidate–something employers do not usually do,
>       unless some other strong consideration, such as discrimination, enters into
>       the picture.

Id.

In this case, Gipson's education and experience as a loan originator for Wells Fargo suggest superior qualifications for the position of Branch Manager. Pls. Opp. at 31, Ex. 3. She has a masters degree, several years of loan origination experience, and at least two years of management experience. See Defs. Mem. at 32. She had a positive work reputation at Wells

12

Fargo for which she went on to receive high praises and strong performance reviews.  See, e.g., Pls. Opp. 31, Ex. 1.  Mr. Settles' objective experience in the field could appear to a factfinder as inferior to that of Gipson.  He lacked any education beyond a bachelors degree and he had less experience in originating loans.  Pls. Opp. at 27.  Though the differences in qualifications between the plaintiff and Mr. Settles may fall short of overwhelming, the differences are significant enough to support a jury determination that plaintiff was significantly better qualified for the branch manager position.

In addition, the criteria on which Wells Fargo relies in its proffer to support its selection of Mr. Settles precludes summary judgment.  Though an employer is certainly free to consider other, non-objective factors in its hiring decision, the D.C. Circuit has warned that "explanations that rely heavily on subjective considerations" warrant closer attention.  Aka, 156 F.3d at 1298. Wells Fargo emphasizes the appreciation of the leadership skills of Mr. Settles as leading to the hiring decision, as well as his performance during the interview process.  Defs. Mem. at 29-30. Where a jury may reasonably find a plaintiff was otherwise significantly better qualified than the chosen applicant, "an employer's strong reliance on subjective feelings about the candidates may mask discrimination.  Indeed . . . an employer's heavy use of 'highly subjective' criteria, such as 'interpersonal skills,' could support an inference of discrimination."  Id. (internal citations omitted).  In light of the standard advanced by this Circuit, the disparity in the candidates' qualifications for the branch manager position that favors plaintiff and Wells Fargo's reliance on subjective criteria (i.e., "leadership skills") in its selection of Mr. Settles create a genuine issue of material fact of whether Wells Fargo's proffer is mere pretext for its selection decision.

13

      c.    <u>Gipson provides other evidence of pretext.</u>

The D.C. Circuit has emphasized that Title VII plaintiffs are not forced to prevail in a contest of resumes to survive a summary judgment motion based on a qualifications-based explanation for an adverse employment action:

> A plaintiff attacking a qualifications-based explanation is of course not limited to comparing his qualifications against those of the successful candidate. The plaintiff can instead seek to expose other flaws in the employer's explanation. For example, the plaintiff can attempt to show that the employer's explanation was fabricated after the fact by showing that it contradicts other contemporaneous accounts of the employer's decision. . . . Adequate evidence of this type may suffice to permit a jury to infer that the employer's explanation is incorrect or fabricated, and thus to infer discrimination.

<u>Aka</u>, 156 F.3d at 1295. Gipson's evidence of pretext does not rely solely on a qualifications argument. Gipson also exposes a question of fact relating to Mr. Vance's conduct during her interview.

Mr. Vance commented to Gipson during her interview that he "did not see how" Gipson could work for him following her charge of discrimination against him. Pls. Opp. at 31. Defendant argues that any meaning in Mr. Vance's statement is inadequate to rebut Wells Fargo's proffer in light of Gipson's positive evaluation of the interview at the time. Defs. Mem. at 37. Nonetheless, the possibility of a statement to convey more than one interpretation in itself suggests that there is a genuine issue of material fact as to its meaning. <u>Coles v. Perry</u>, 271 F. Supp. 2d 157, 162 (D.D.C. 2003). Construing the comment, as the Court must, in a light most favorable to Gipson, the explicit reference to the protected activity by the decision-maker at the very interview leading to non-selection easily suggests possible retaliatory intent. The very ambiguity of Mr. Vance's comment warrants a jury determination as to its meaning. <u>See Lucas</u>

14

v. Paige, 435 F. Supp. 2d 165, 171-72 (D.D.C. 2006). If the jury believes Mr. Vance's comment

was reflective of his refusal to hire Gipson regardless of the substance of the coming interview

because he could not imagine Gipson working for him after prior disagreements, then the jury

may well reasonably conclude that Gipson's non-selection was in retaliation for her complaint of

discrimination against Mr. Vance. If, on the other hand, the jury believes that Mr. Vance never

made such a remark or that any remark he did make failed to show any animus toward Gipson

working for him after she complained of discrimination, then the jury may well reasonably find

in favor of defendant. Since there is a genuine issue as to any meaning in Mr. Vance's comment,

and since the meaning in that comment is material to the outcome of the case, the question must

be presented to the jury for final resolution.

3.    *No Failure to Exhaust Administrative Remedies*

Wells Fargo also moves for the dismissal of Gipson's claim of discriminatory non-

selection for failure to exhaust her administrative remedies. Defs. Mem. at 33. In actions

brought under Title VII, a court has authority only over those claims that are (1) contained in the

plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the

administrative complaint and (2) claims for which the plaintiff exhausted administrative

remedies. Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995); Powell v. Castaneda, 390 F.

Supp. 2d 1, 8 (D.D.C. 2005). Wells Fargo claims that Gipson's EEOC complaint alleges class

claims for race, sex, and age discrimination, which precludes her from seeking individual claims

of race, sex, and age discrimination in connection with her non-selection to the branch manager

position. Defs. Mem. at 34.

The principal function of the EEOC filing requirement is to "enable the EEOC to provide

the alleged wrongdoer with notice and to permit possible conciliation." Foster v. Gueory, 655 F.2d 1319, 1323 (D.C. Cir. 1981). Gipson's filing of the EEOC complaint fulfilled this purpose. As plaintiff points out, Wells Fargo provides no legal authority for its argument that a filing of class claims with the EEOC bars an individual action in absence of a class suit. Pls. Opp. at 42. Wells Fargo again fails to provide any legal authority for its argument in its Reply, and this Court finds none to support it. In the absence of such authority, and because Gipson's current claims are "like or reasonably related to" the claims in her EEOC administrative complaint, summary judgment for failure to exhaust administrative remedies is denied.

      4.    *Summary Judgment Denied as to Non-Selection Claim*

In sum, Gipson has produced considerable evidence to suggest she was well-qualified for the position she sought. Just as the threshold for providing non-discriminatory reasons is low, "proffering evidence from which a jury could find that [the employer's] stated reasons . . . were pretextual . . . will be enough to get a plaintiff's claims to a jury." George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2005). Although the jury may ultimately decide to credit the defendant's version of events rather than that of the plaintiff, "this is not a basis upon which a court may rest in granting a motion for summary judgment." Id. Operating under that standard, Gipson adequately demonstrates the possibility of discriminatory and retaliatory pretext in Wells Fargo's explanation for its selection decision. If believed by a jury, the evidence presented is sufficient for a jury to find pretext in Wells Fargo's hiring decision, and therefore summary judgment as to Gipson's non-selection claims must be denied.

B.      TERMINATION CLAIM

1.      *A* Prima Facie *Case of Retaliation*

Plaintiff alleges retaliation in violation of the DCHRA in her termination from Wells

Fargo on July 12, 2004.  As claims under the DCHRA are evaluated in accordance with Title VII,

a prima facie case for retaliation requires Gipson to show that (1) she engaged in a protected

activity; (2) she subsequently suffered an adverse action by her employer; and (3) there was a

causal connection between the two.  Mitchell, 759 F.2d at 86.  Without disputing that Gipson is a

member of several protected classes who suffered an adverse employment action in her

termination, Wells Fargo again vigorously challenges Gipson's satisfaction of the third prong of

the prima facie case of retaliation in moving for summary judgment as to her termination claim.

As previously noted, the causal connection in a claim of retaliation "may be established

by showing that the employer had knowledge of the employee's activity, and that the adverse

personnel action took place shortly after that activity."  Id.; see also Holcomb, 433 F.3d at 903.

Where the only evidence of retaliation is temporal proximity between the protected activity and

the alleged retaliatory action, "those events must be very close in time for that evidence to be

sufficient for a jury to infer a retaliatory motivation."  Kalinoski, 435 F. Supp. 2d at 69; see also

Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).  Wells Fargo argues that the

committee to recommend Gipson's termination had no awareness of her earlier protected

activity, and the time of Gipson's termination several years following her initial complaint with

the EEOC is too large of a temporal gap to permit any inference of retaliatory motive in her

firing.  Defs. Mem. at 9.  But, Gipson argues that the decision to terminate her necessarily

involved Mr. Frohn, who was aware of Gipson's protected activity.  In addition, Gipson points to

17

more than mere temporal proximity to establish a <u>prima facie</u> case of retaliation. Gipson relies on evidence that (1) she received disparate treatment in her termination compared to other, similarly situated employees investigated for fraud by Wells Fargo; (2) Wells Fargo violated its standard procedures in terminating her; and (3) Wells Fargo's current explanation for its decision contradicts its contemporaneous account at the time of her firing.

       a.    <u>Mr. Frohn acted in terminating Gipson and knew of her prior protected activity.</u>

Wells Fargo does not dispute Mr. Frohn's involvement in approving and signing off on Gipson's termination. Defs. Mem. at 15. Wells Fargo argues, however, that because the fraud committee–on which Mr. Frohn relied "in making his decision"–did not know of Gipson's protected activity, Gipson cannot impart adequate knowledge to the decision-making process. Defs. Mem. at 15-16. This argument does not comport with logic. Even with the input of the Fraud Risk Committee, it is Mr. Frohn who decided to terminate Gipson and "signed off" on doing so. <u>Id.</u> at 15; Pls. Opp. at 39. Nowhere does defendant suggest that Gipson's termination could have occurred without Mr. Frohn's explicit approval. Wells Fargo concedes Mr. Frohn's knowledge of her prior protected activity, and it is undisputed that Mr. Frohn remained aware of the ongoing lawsuit relating to Gipson's non-selection claims.

The case cited by defendant is inapposite. <u>See</u> Defs. Mem. at 16. In <u>Carter v. George Washington Univ.</u>, 387 F.3d 872 (D.C. Cir. 2004), a forty-seven-year-old African American female brought claims of age and race discrimination and retaliation following several denied promotions. Plaintiff had complained of discrimination within her office prior to the first denied promotion, and she then filed a complaint with the EEOC following her second denied

promotion, later amended to include a third denied promotion.  Id. at 876.  In the claim

referenced by defendant, the plaintiff's non-selection for the position of Executive Director, the

university conceded that plaintiff had "established a prima facie case under McDonnell Douglas

for both race and age discrimination."  Id. at 879.  The selection committee did not advance her

name as a finalist because she interviewed poorly, and the plaintiff presented to the court "no

evidence from which a reasonable jury could infer that GW's claim that she interviewed poorly

was pretextual."  Id. at 880.  It is true that the selecting official and alleged discriminatory agent

of the university was not part of the committee that failed to advance the plaintiff's name as a

finalist, but his very absence from that process distinguishes the situation in Carter from

Gipson's claim.  In this case, Mr. Frohn knew of Gipson's activity and participated in the

decision to terminate her employment.

> b.    Gipson provides other evidence of causality other than temporal
>       proximity.

In addition to the lack of knowledge by the committee to recommend Gipson's

termination, Wells Fargo argues Gipson fails on the third prong of the prima facie case due to the

absence of temporal proximity between her protected activity and her firing.  Defs. Mem. at 17.

This Court has repeatedly acknowledged the need for temporal proximity when serving as the

only evidence of causality for retaliation.  Gipson, however, relies on evidence beyond any

reference to temporal proximity.

> i.    *Gipson provides evidence of disparate treatment.*

Gipson alleges that she received harsher treatment than her similarly situated colleagues

who were also subjects of fraud investigations.  Pls. Opp. at 36.  Disparate treatment of similarly

situated employees is the very essence of discrimination.  See Palmer v. Baker, 905 F.2d 1544

(D.C. Cir. 1990).  The disparate treatment of a similarly situated employee may suggest

discrimination or retaliation to support a jury finding for plaintiff.  Gipson offers C.O.,[5] another

HMC in the Greenbelt Branch, who was investigated for possibly fraudulent loans and "talked

to" without termination.  Pls. Opp. at 36.  In response, Wells Fargo argues the only appropriate

colleague appropriate for comparison is C.J., another employee terminated following a fraud

investigation.  Defs. Rely at 15.

        "Whether two employees are similarly situated ordinarily presents a question of fact for

the jury."  George, 407 F.3d at 415.  Where disparate treatment is at issue, courts in this circuit

have been cautious in granting summary judgment, since questions of disparate treatment are

difficult questions of fact often left to a jury.  Mitchell v. DCX, Inc., 274 F. Supp. 2d 33, 39

(D.D.C. 2003).  In viewing the evidence in the light most favorable to Gibson as required, a

question of material fact exists as to the treatment of C.O., C.J., and other named employees

compared to the treatment of Gipson in her termination.

                    ii.    *Gipson provides other evidence to establish a* prima facie *case.*

        According to plaintiff, Wells Fargo's standard business practice in terminating employees

is to involve the second-line supervisor, which in Gipson's case would be Mr. Leo Natali.  Pls.

Opp. at 34.  In this instance, however, Mr. Natali did not engage in the initial decision to

terminate Gipson.  See id.  Even if Mr. Frohn had the ability to override an initial decision by Mr.

Natali to terminate or not terminate Gipson, Defs. Reply at 14, a deviation from typical procedure

---

        [5] In light of parties' Stipulation of Confidentiality entered into on February 15, 2006,
initials of personnel are included in this Memorandum Opinion as opposed to full names.

in the termination process may support a finding of retaliation.  See Lathram, 336 F.3d at 1093.

Finally, Gipson also states the "shifting reasons" for her termination supports a prima facie finding of retaliation.  Pls. Opp. at 35.  At the time of Gipson's firing, Wells Fargo stated her termination was due to violations of a Wells Fargo company policy, outlined in human resources documentation.  Id.  Nothing regarding Federal Housing Administration regulations was discussed either at the meeting in which Gipson was terminated or in the "Talking Points" document created by human resources.  Id.  Now, Wells Fargo argues termination was appropriate given Gipson's violation of Federal Housing Administration regulations.  Defs. Mem. at 20.  The difference in stated rationales for Gipson's termination would allow a reasonable jury to infer retaliation.  See Aka, 156 F.3d at 1293.

c.    Gipson does not need to show interceding acts of discrimination.

Wells Fargo also argues Gipson must show other acts of discrimination between the filing of her initial EEOC charge and her termination to support a claim for retaliation, citing to Buggs v. Powell, 293 F. Supp. 2d 135, 149 (D.D.C. 2003).  Defs. Reply at 4.  In Buggs, the court found an inference of retaliatory discrimination with respect to the plaintiff's non-selection, even though the proximity of the non-selection to the protected activity would not alone support such an inference.  Buggs, 293 F. Supp. 2d at 149.  There, the non-selecting official was the same person about which the plaintiff had filed a charge of discrimination, and the investigation of that claim had not been resolved.  Id.  at 149-50.  Similarly, Gipson's initial suit in this action for discrimination and retaliation in her non-selection at the time of her termination remains unresolved, despite defendant's insistence of the "dormancy" of the pending case in the interceding years.  Defs. Mem. at 4-5.  Mr. Frohn, responsible to some degree for authorizing

21

Gipson's termination, was aware of Gipson's initial complaint of discrimination, at a minimum by having heard Mr. Vance comment on the charge in Gipson's interview for Branch Manager. See Pls. Opp. at 31. Furthermore, Mr. Frohn has been involved in litigation surrounding that charge since the beginning. Even though parties disagree as to the degree of Mr. Frohn's role in failing to promote Gipson and later terminating her, the fact that Mr. Frohn remains integral to the discrimination dispute and plays some authoritative part in Gipson's termination could support a jury finding an inference of retaliatory discrimination. Buggs, 293 F. Supp. 2d at 150; see also Cones v. Shalala, 199 F.3d 512, 521 (2000).

    2.    *Proffer and Pretext*

Having found that Gipson established a prima facie case of retaliation in her termination claim, the Court must next consider whether Wells Fargo offers a legitimate, non-retaliatory reason for her termination. See McDonnell Douglas, 411 U.S. at 802. Wells Fargo's proffer of terminating Gipson for reasons relating to the fraud investigation conducted by the Fraud Risk Committee satisfies its burden of production to raise a genuine issue of material fact as to whether it retaliated against Gipson. See Burdine, 450 U.S. at 254-55.

As noted earlier, with the burden back on Gipson to suggest Wells Fargo's justification is mere pretext, this Court examines all of the evidence, including evidence establishing plaintiff's prima facie case. Aka, 156 F.3d at 1289. For the reasons stated above in finding a prima facie case, this Court concludes that Gipson has produced evidence from which a jury could reasonably find that her termination was a pretext for retaliation. Furthermore, additional evidence offered to establish pretext, notably questions regarding the actual findings of the fraud investigation, also raises genuine issues of material fact that may not be resolved on summary

judgment.[6]  Looking at all the evidence, plaintiff advances sufficient reason to show pretext, and therefore defendant's motion for summary judgment must be denied.


**CONCLUSION**

Having concluded that a reasonable jury could find from all of the available evidence that the non-selection and termination of Gipson by Wells Fargo were made for discriminatory and/or retaliatory reasons, summary judgment of defendant's motion is denied.  An Order accompanies this Memorandum Opinion.


_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated:

---

[6]  Plaintiff intends to introduce evidence of pretext at trial not at issue in this memorandum opinion.  Though the additional evidence presents even more questions of material fact, the Court need not address why this is so given the preclusion of summary judgment based on evidence presented to support Gipson's prima facie case.