**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ | ) |
| **YVONNE GIPSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Civil Action No. 00-2865 (JMF)** |
| | )      **Civil Action No. 05-1184 (JMF)** |
| **WELLS FARGO BANK N.A.,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM OPINION AND ORDER**

Before me is <u>Defendant's Motion to Strike Expert</u> [#56].  In this case, Wells Fargo Bank

N.A. ("Wells Fargo") defends itself against retaliation claims based on plaintiff Gipson's

termination on the grounds that an internal investigation yielded the information that, in violation

of Wells Fargo's policies, Gipson accepted "income and occupancy documents from interested

third parties by facsimile– instead of the borrowers themselves."[1]  According to Wells Fargo,

Gipson's behavior violated "company policy since this practice directly contravenes guidelines

propagated by the Federal Housing Administration ("FHA") governing renovation loans."[2]

Gipson, for her part, will present evidence at trial in an attempt to show that the reason

given for her termination was a pretext for retaliation against her for filing earlier complaints of

gender, race, and age discrimination. Among the evidence she will produce is the opinion

testimony of Frederick C. Douglas Jr. ("Douglas").

_____

[1] <u>Memorandum of Points and Authorities in Support of  Defendant's Motion to Strike</u> at
4.

[2] <u>Id.</u>

Douglas indicated that he understood Gipson had been fired for accepting "faxed borrower income verification documents from realtors, instead of original documents from borrowers in one or more FHA insured loans, specifically a 203(k) renovation loan."[3]  Douglas, formerly Assistant Secretary for Single Family Housing, had responsibility for the administration of the  FHA 203(k) Renovation Loan Program.  Based on that and other experience, he intends to testify that in his expert opinion: (1) while FHA guidelines require that original documents be provided from potential borrowers, the failure to obtain would not, in FHA practice and procedure, provide grounds for taking action against Wells Fargo; (2) it is highly unlikely that a mortgagee, engaged in underwriting conventional mortgage loans, would take action against a loan originator, like Gipson, for the acts attributed to her.  To the contrary, securing the required documentation from the borrower is the responsibility of others. According to Douglas, the acts that led to her termination "are common throughout the mortgage loan industry and often viewed as a part of customer service."[4]

Wells Fargo protests that Douglas's testimony is not proper expert testimony under Rule 702 of the Federal Rules of Evidence and is completely irrelevant.  It points out that whether a government agency would have censured Gipson or Wells Fargo for the actions at issue is beside the point; Wells Fargo can discipline its employees for violating company policies, based on FHA regulations, irrespective of whether the FHA would have disciplined it or Gipson for the same behavior.

---

[3]  Id., Ex. 3, Letter of Frederick C. Douglas, Jr., to Robert C. Seldon, Esq., dated May 12, 2006.

[4]  Id.,  Ex. 1, Expert Analysis of Frederick C. Douglas, Jr., at 9-10.

As to not being proper expert testimony, Rule 702 permits a witness to testify in the form

of an opinion if he is qualified by (inter alia) knowledge or experience if (1) the testimony is

based upon sufficient facts and data; (2) the testimony is the product of reliable principles and

methods; and (3) the witness has applied the principles and methods reliably to the facts of the

case.

Expert evidence based on experience unquestionably survived the 2000 amendment to

Rule 702.[5]  On a daily basis, for example, police officers are permitted to testify based on their

experience and knowledge that a certain term refers to a certain drug or that a certain amount of

drugs are possessed for the purpose of re-sale.  It was the intent of the draftsmen of the

amendment to Rule 702 to permit such testimony.  The advisory committee note therefore states:

> For example, when a law enforcement agent testifies regarding the
> use of code words in a drug transaction, the principle used by the
> agent is that participants in such transactions regularly use code
> words to conceal the nature of their activities.  The method used by
> the agent is the application of extensive experience to analyze the
> meaning of the conversations.  So long as the principles and
> methods are reliable and applied reliably to the facts of the case,
> this type of testimony should be admitted.[6]

That is precisely the situation here.  Douglas is applying his experience to known facts to

arrive at a conclusion about those facts.  That is, after all, what human beings do to arrive at

conclusions based on their experience, and I cannot reject that methodology as unreliable.  I

appreciate Wells Fargo's claims of other weaknesses in  Douglas's testimony but, in my view,

they are fodder for cross-examination and go to weight, not admissibility.  My narrow function as

---

[5]  Fed. R. Evid. 702 advisory committee's note.

[6]  Id.

gatekeeper under Rule 702 is exhausted once I conclude that the opinion is based on known facts and derived from the witness's experience as applied to those facts. I am compelled to reach that conclusion here.

Whether the opinion expressed is useful to the jury is a function of relevance. Irrelevant evidence cannot be helpful. Wells Fargo argues that whether FHA would have disciplined either itself or Gipson has nothing to do with whether Wells Fargo acted in accordance with its policies when it fired Gipson. That is true, but it is also true that Gipson has the right to try to establish that there was such a disproportion between what she did and what she suffered that the punishment was really retaliation for exercising her rights. The assertions that the FHA would not have punished her or Wells Fargo, that other members of the organization were responsible for collecting the originals of the documents needed, or that what she did is condoned in the industry all speak to that claimed disproportion. If credited by the jury, they would allow it to reasonably conclude that the disproportion was great enough to permit the conclusion that the reason given for her discharge was a pretext for retaliation. The evidence is therefore relevant and helpful to the jury.

Finally, Wells Fargo points to two cases in which the expert seized from the jury its function.[7] I can assure counsel that will not happen here. Douglas will not be permitted to opine that any action by Wells Fargo was pretextual or retaliatory. He will be limited to stating what he understands the facts to be and the opinions pertaining to them that I identified above.

---

[7] Burkhart v. WMATA, 112 F.3d 1207 (D.C. Cir. 1997); Steele v. D.C. Tiger Market, 854 A.2d 175 (D.C. 2004)

For the reasons stated, it is therefore **ORDERED** that Defendant's Motion to Strike

Expert [#56] is denied.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: