FILED

NOV 1 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Let These Be Given to the jury
John M Facciola 11/14/06 @ 9:45 am

JURY INSTRUCTIONS

Gipson v. Wells Fargo Bank, N.A.
00-2865; 05-1184

FUNCTION OF THE COURT

The function of the judge is to conduct the trial of the case in an orderly, fair, and efficient manner. The judge also must rule upon questions of law arising during the trial, and must tell you the law that applies to this case. It is your duty to accept the law as I state it to you without questioning the wisdom of these instructions. In other words, even if you disagree or do not understand the reasons for any of the instructions, you are bound to follow them.

FUNCTION OF THE JURY

Your function as jurors is to decide the facts. You are the exclusive judges of the facts. You alone determine the weight, the effect and the value of the evidence, and the believability of the witnesses. You should decide the facts only from a fair evaluation of all of the evidence, without prejudice, sympathy, fear or favor. Under your oath as jurors you are not to be swayed by sympathy. You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision. You have been chosen to try issues of fact and reach a verdict on the basis of the evidence or lack of evidence. If you let your sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at a just verdict.

SIGNIFICANCE OF PARTY DESIGNATIONS

During the course of the trial, you have heard references to the terms plaintiff and defendant. To put it as simply as possible, the plaintiff is the person who starts a lawsuit and the defendant is the person who is sued by the plaintiff. During your deliberations, however, you must not attach any significance in weighing the evidence to the terms plaintiff and defendant. In other words, the fact that the plaintiff has filed a lawsuit against the defendant does not mean that the plaintiff is entitled to your verdict or that her evidence is entitled to greater weight than the defendant's evidence. A plaintiff must prove every element of her claim against a defendant by a preponderance of the evidence before she is entitled to prevail.

UNANIMOUS VERDICT REQUIRED / JUROR'S DUTY TO DELIBERATE

The verdict must represent the considered judgment of each juror. In order to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous. It is your duty as jurors to consult with one another and to deliberate expecting to reach an agreement or unanimous verdict. You must decide the case for yourself but you should do so only after thoroughly discussing it with your fellow jurors. In the course of your deliberations, you should not hesitate to change an opinion when convinced that it is wrong. You should not be influenced to vote in any way on any question just because another juror favors a particular decision or holds an opinion different from your own. You should reach an agreement only if you can do so in good conscience. In other words, you should not surrender your honest beliefs about the effect or weight of evidence merely to return a unanimous verdict or solely because of other jurors' opinions.

FOREPERSON / VERDICT FORM / QUESTIONS

When you go to the jury room you should first select one of your members to act as your

foreperson. The foreperson will preside over your deliberations and will speak for you here in court. A verdict form has been prepared for your convenience. You will take the verdict form to the jury room and when you have reached unanimous agreement, you will have your foreperson fill it in, date and sign it, and then return to the courtroom. As you will note from the instructions on the verdict form, depending on how you answer a question, it may or may not be necessary to answer the next question. Follow the instructions provided. If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. No member of the jury should ever attempt to communicate with me by any means other than a signed writing, and I will not communicate with any member of the jury on any subject touching the merits of this case other than in writing, or orally here in open court. I will then respond as promptly as possible, either in writing or having you return to the courtroom so I can address you orally. I caution you, however, with regard to any message or question you might send, that you should never state or specify your numerical division or any part of the verdict at the time. This means, for example, that you should never state to the Court that the jury is divided 7-1, 6-2, or 4-4, or in any other fashion.

---

NOTETAKING BY JURORS

During the trial, I have permitted those jurors who wanted to do so to take notes. You may take your notes with you to the jury room and use them during your deliberations if you wish. Your notes are only to be an aid to your memory and they should not replace your memory. Those jurors who have not taken notes should rely on their own memory of the evidence and should not be influenced by another juror's notes if the notes do not coincide with their memory. The notes are intended to be for the notetaker's own personal use. At the end of your deliberations, please

tear out from your notebooks any notes you have made and give them to your foreperson. The clerk will collect your notebooks and pencils when you return to the courtroom, and I will ask the foreperson to give the clerk your notes when your verdict is announced. The clerk will give the notes to me and I will destroy your notes immediately after the trial. No one, including myself, will look at them.

---

ATTITUDE AND CONDUCT OF JURORS

Remember that you are not advocates in this matter. You are neutral judges of the facts. The final test of the quality of your service will lie in the verdict which you return to this courtroom. You will make an important contribution to the cause of justice if you arrive at a just and proper verdict in this case. Therefore, during your deliberations in the jury room, your purpose should not be to support your own opinion but to determine the facts.

---

INSTRUCTIONS TO BE CONSIDERED AS A WHOLE

You must treat and consider all of these instructions as a whole. You must not single out any particular instruction or sentence while ignoring others. You must give each instruction equal importance and consider each one equally with all other instructions.

---

COURT'S COMMENTS ON EVIDENCE

The law permits me to comment to you about the evidence in this case. My comments are only my opinions about the facts, and you are not bound by my opinions. If, during the course of this trial, or the giving of these instructions, I have made or make any comment on any evidence, you are free to disregard it. Remember, you are the sole and exclusive judges of all questions of fact in this case.

COURT'S QUESTIONS TO WITNESSES

During the course of the trial, I may have asked questions of a witness, to obtain information or to bring out facts. You should not take my questions to witnesses as any indication of my opinion about how you should determine the facts.

JURY NOT TO TAKE CUE FROM JUDGE

If I have said or done anything at any time during this case, including giving these instructions, which seemed to indicate my opinion on any of these matters, then I instruct you to disregard that indication. Nothing I have said or done should influence or suggest to you that I favor any party in this case. I have not meant to express, or to suggest, any opinion about which witnesses should be believed, or which facts are established.

RULINGS ON OBJECTIONS

There may have been times during the trial when a lawyer made an objection to a question asked by another lawyer or to an answer given by a witness. It is the duty of a lawyer to make objections if the lawyer believes something improper is being done. When I sustained an objection to a question, the witness was not allowed to answer it. Do not attempt to guess what the answer might have been had I allowed the question to be answered. Similarly, when I told you to disregard a particular answer -- when I ordered it stricken -- you should have put that statement out of your mind, and you may not refer to that stricken answer during your deliberations. While it may have been natural for you to become impatient with the delay caused by objections or other portions of the proceedings, you must not let your feelings in any way affect your deliberations. Those interruptions concerned legal matters, while your job is to decide the facts. You should not be influenced by the any lawyer's objections, no matter how I

ruled upon them.

INADMISSIBLE AND STRICKEN EVIDENCE

It is the duty of the lawyers to object when the other side offers testimony or other materials which a lawyer believes are not properly admissible in evidence. If, during the course of the trial, I sustained an objection by one lawyer to a question asked by another lawyer, you are to disregard the question and you must not guess about what the answer would have been. If a question was asked and the witness answered it, and I ruled that you should not consider the answer, then you must disregard both the question and the answer in your deliberations just as if the question and answer had not been spoken.

EQUALITY OF LITIGANTS

Our system of justice requires that you decide the facts of this case in an impartial manner. You must not be influenced by bias, sympathy, prejudice or public opinion. It is a violation of your sworn duty to base your verdict upon anything other than the evidence in the case. In reaching a just verdict, you must consider and decide this case as an action between persons of equal standing in the community and of equal worth. A corporation, whether large or small, has the same right to a fair trial as a private individual. All parties stand equal before the law and are to be treated as equals in this court. In other words, the fact that the defendant is Wells Fargo, a corporation, and Ms. Gipson is an individual must not affect your decision.

EVIDENCE IN THE CASE

You may consider only the evidence properly admitted in the case. Evidence includes the sworn testimony of witnesses, exhibits admitted into evidence, and facts stipulated and agreed to by counsel. You may consider any facts to which all counsel have agreed or stipulated to be

undisputed evidence.

---

EVIDENCE IN THE CASE - JUDICIAL NOTICE

Another type of evidence includes facts of which I take judicial notice. I may take judicial notice of public regulations, acts, places, facts and events which I regard as matters of common knowledge. When I take judicial notice of a particular fact, you may regard that fact as included in the evidence and proven.

I have taken judicial notice of a regulation of the Equal Employment Opportunity Commission. It provides that:

> Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application from submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. . . . When a charge of discrimination has been filed . . . against an employer under Title VII or the ADA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or action.

Ladies and gentlemen, you must first determine whether the regulation applies to the situation by determining whether it is more likely than not that the notes Mr. Frohn took during his behavioral interviews of Ms. Gipson and Mr. Settles were "other records." If you so find, you may infer, but do not have to infer, that had the notes been in existence now, and were available now, their contents would not be favorable to the defendant.

---

INFERENCES

In arriving at your verdict, you are to consider only the evidence in the case. When you are considering the evidence, however, you are not limited solely to the statements of the witnesses. You are permitted to draw from the evidence any inferences or conclusions that reason and common sense lead you to make.

---

STATEMENTS OF COUNSEL

Statements and arguments of the lawyers, such as their opening statements and closing arguments, are not evidence. They are only intended to help you understand and interpret the evidence from each party's perspective. The questions that the lawyers ask are not evidence. A lawyer's question that contains an assertion of a fact does not provide evidence of that fact.

---

JURY'S RECOLLECTION CONTROLS

During this case, I or the lawyers may have called your attention to certain evidence. If you remember that evidence differently from the way I or the lawyers stated it, then you should disregard our characterization of the evidence and rely upon your own memory.

---

BURDEN OF PROOF

The party who makes a claim has the burden of proving it by a preponderance of the evidence. To establish a fact by a preponderance of the evidence is to prove that it is more likely so than

not so. In other words, a preponderance of the evidence means that the evidence produces in your mind the belief that the thing in question is more likely true than not true. If, after considering all of the evidence, the evidence favoring the plaintiff's side of an issue is more convincing to you, and causes you to believe that the probability of truth favors the plaintiff on that issue, then the plaintiff will have succeeded in carrying the burden of proof on that issue. The term "preponderance of the evidence" does not mean that the proof must produce absolute or mathematical certainty. For example, it does not mean proof beyond a reasonable doubt as is required in criminal cases. Whether there is a preponderance of the evidence depends on the quality, and not the quantity, of evidence. To put it differently, if you were to put the plaintiff's and the defendant's evidence on opposite sides of the scales, the plaintiff would have to make the scales tip ever so slightly on her side. If you believe, however, that the evidence is evenly balanced, on an issue the plaintiff had to prove, then the plaintiff has not carried the burden of proof and your finding on that issue must be for the defendant.

---

EVIDENCE PRODUCED BY ADVERSARY

In determining whether any fact has been proven by a preponderance of the evidence, you should consider all the evidence bearing upon that fact, regardless of who produced it. A party is entitled to benefit from all evidence that favors that party whether that party produced it or it was produced by that party's adversary. That a witness was called by one party rather than another is irrelevant.

---

CORPORATE PARTY'S AGENTS AND EMPLOYEES

One party in this case is a corporation. A corporation can act only through individuals as its agents or employees. In general, if any agent or employee of a corporation acts or makes

statements while acting within the scope of his or her authority as an agent, or within the scope of his or her duties as an employee, then under the law those acts and statements are part of the corporation.

DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence: direct and circumstantial. Direct evidence is the direct proof of a fact, such as the testimony of an eyewitness. Circumstantial evidence is indirect evidence of a fact which is established or logically inferred from a chain of other facts or circumstances. For example, direct evidence of whether an animal was running in the snow might be the testimony of a person who actually saw the animal in the snow. Circumstantial evidence might be the testimony of a person who saw the tracks of the animal in the snow, rather than the animal itself. You may consider both types of evidence equally. The law makes no distinction between the weight to be given either direct or circumstantial evidence. The law does not require a greater degree of certainty for circumstantial evidence than of direct evidence. You should weigh all the evidence in the case, both direct and circumstantial, and find the facts in accordance with that evidence.

JURY TO DETERMINE CREDIBILITY OF WITNESSES

In evaluating the evidence and deciding what the facts are, you must consider and weigh the testimony of all the witnesses who have appeared before you. You are the sole judges of the credibility of the witnesses. In other words, you alone are to determine whether to believe any witness and to what extent any witness should be believed. If there is any conflict in the testimony between a witness's testimony and other evidence, it is your function to resolve the conflict and to determine where the truth lies. In deciding the credibility of any witness, you may

consider any matter that may have a bearing on the subject. You may consider the appearance and the behavior of the witness on the witness stand; whether the witness impresses you as a truthful individual; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case; or whether the witness has any friendship or animosity toward other persons concerned in this case. You may consider the reasonableness or unreasonableness, and the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or corroborated by other credible evidence. If you believe that any witness has shown himself to be biased or prejudiced, either for or against either side in this trial, you may consider and decide whether that bias or prejudice has colored the testimony of the witness so as to affect the witness's desire and capability to tell the truth. You should give the testimony of each witness as much weight as in your judgment it is fairly entitled to receive.

---

NUMBER OF WITNESSES AND EXHIBITS

The relative weight of the evidence on a particular issue is not determined by the number of witnesses testifying for either side or the number of exhibits being offered. You should consider all the facts and circumstances in evidence to determine which of the witnesses are worthy of greater belief and which of the exhibits are worthy of greater belief. You may find that the testimony of a smaller number of witnesses or the presentation of a smaller number of exhibits on one side is more believable than the testimony of a greater number of witnesses or a greater number of exhibits on the other side. Indeed, the testimony of a single witness or the

presentation of a single piece of evidence, which you believe to be the truth, is enough to prove any fact. If, after considering all the evidence in the case, you hold a greater belief in the accuracy and reliability of one or a few witnesses' testimony, or one or a few exhibits, then you may base your verdict on that testimony or on that one or several exhibits, even though a larger number of witnesses may have testified to the contrary, or a larger number of exhibits may have suggested the contrary.

---

DEPOSITIONS AS EVIDENCE

During the trial of this case, certain testimony has been read to you. You should give to this testimony the same consideration as to its weight and credibility as you give to the testimony of witnesses who testified here in court. You must not discount any testimony merely because it was read to you in the form of a deposition.

---

IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS

The testimony of a witness may be discredited or impeached by showing that he or she has previously made statements which are inconsistent with his or her present courtroom testimony. It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the witness's testimony in court here. If a witness at trial has been confronted with a prior statement which that witness made, and that prior statement is inconsistent with his or her testimony here in court, then you may consider the prior statement when you assess the truthfulness of the testimony he or she gave in court. If the witness made the prior inconsistent statement under oath subject to the penalty of perjury, such as at a deposition, then you may also treat that prior statement as evidence in this case -- that is, you may treat what the witness said in that prior statement as evidence like any other evidence in this case.

If the witness was not under oath subject to the penalty of perjury when he or she made the statement, then you may not treat the prior statement as evidence of the facts in the statement. You may consider the statement only to evaluate the witness's credibility, that is, you may use the prior statement only to determine whether to believe the witness's present testimony in court. If you believe that any witness has been discredited or impeached, then you should give his or her testimony the weight, if any, that you judge it is fairly entitled to receive.

---

TIMING OF TRIAL

You are instructed that the length of time between the filing of the complaint and the date of trial is not due to the actions of any party or of the court.

---

**NATURE OF THE CLAIMS**

The plaintiff, Yvonne Gipson, has brought this lawsuit against the defendant, Wells Fargo.

There are two cases consolidated into this one lawsuit.

A. NON-SELECTION (First Lawsuit)

In the first case, Ms. Gipson claims that she was denied a promotion to the position of Branch Manager in the new Wells Fargo mortgage office in Washington, D.C., in retaliation for pursing an internal complaint of discrimination. Ms. Gipson also claims that Wells Fargo did not select her in order to discriminate against her because she is a woman, because she is an African American woman, and on account of her age.

Wells Fargo has denied Ms. Gipson's allegations and contends that it selected Mr. Settles instead of Ms. Gipson for legitimate reasons that were free from discrimination and retaliation.

The parties have agreed that Ms. Gipson is an African American woman who was 58

years of age when she was passed over for promotion; that she filed an internal complaint of discrimination based on race with Wells Fargo; and that this internal complaint constituted protected EEO (Equal Employment Opportunity) activity. The parties have also agreed that the selectee, John Settles II, is an African American man who was 29 years old at the time of his selection; and that Mr. Settles never pursued a discrimination complaint or engaged in any other form of protected EEO activity prior to his selection or at any time during his employment with Wells Fargo.

B. TERMINATION (Second Lawsuit)

In the second case, Ms. Gipson claims that Wells Fargo terminated her employment in retaliation for bringing the first lawsuit over not being selected as Branch Manager, for filing charges with the EEOC over not being selected, and for pursuing her earlier internal complaint of discrimination against Wells Fargo.

Wells Fargo has denied these charges and contends that it terminated Ms. Gipson for legitimate reasons that were free from retaliation.

The parties have agreed that Ms. Gipson filed a lawsuit against Wells Fargo over not being promoted as a Branch Manager, that she filed a charge with the Equal Employment Opportunity Commission against Wells Fargo over not being selected as a Branch Manager, that she filed an internal complaint alleging discrimination with Wells Fargo, and that Ms. Gipson's lawsuit, internal complaint, and charge to the EEOC constituted protected EEO activity.

The first case arises under federal laws, which prohibit employers from discriminating against employees on the basis of their sex, age, or race, and from retaliating against employees for engaging in protected activity including filing internal complaints of discrimination with their

employers. The second case arises under District of Columbia law, which prohibits employers from retaliating against employees for engaging in protected activity including filing lawsuits against their employers that allege discrimination and retaliation, filing internal complaints of discrimination against their employers, and filing Equal Employment Opportunity Commission charges of discrimination and retaliation against their employers.

**SEPARATE VERDICTS ON EACH CLAIM**

By your verdict, you will decide all disputed issues of fact. I have decided all questions of law that arose during the trial and will now instruct you on the law you must follow and apply in deciding your verdict. Because you are being called upon to decide the facts of this case, you should give careful attention to the testimony and exhibits presented for your consideration, bearing in mind how I have instructed you concerning the manner in which you should determine the credibility or "believability" of each witness and the weight to be given his or her testimony.

As to Ms. Gipson's non-selection claim in the first lawsuit, Ms. Gipson claims that she was not selected for Branch Manager because of her race, age, or sex and in retaliation for engaging in "protected activities." The important thing to bear in mind is that plaintiff makes distinct and separate claims as to her non-selection. Therefore, you must consider each claim separately and individually and not let your determination as to one claim affect or influence your decision as to the other claim. You will be awarding damages separately under each Count where you have found in plaintiff's favor and not found in defendant's favor. Do not concern yourselves with the possibility that any damages that you may award on one Count duplicates any damage award on another. If that occurs, it is the function of the Court to make any adjustments.

Your function as the jury will be to render separate verdicts on liability on each claim in

each of the two cases that form this one consolidated lawsuit. If you find for Ms. Gipson on any of her claims in either or both cases, then you will also render separate verdicts on the amount of damages to award her. If you find that Wells Fargo did not discriminate or retaliate against Ms. Gipson in not selecting her as Branch Manager, you will make no award of damages to Ms. Gipson in the first case. If you find that Wells Fargo did not retaliate against Ms. Gipson in terminating her, you will make no award of damages to Ms. Gipson in the second case.

---

**STATUTES**

The two cases that comprise this one consolidated action arise under different statutes. The first case arises under federal law. The second case arises under District of Columbia law. In certain ways, these statutes are the same. In other ways, they are different.

When I give you instructions, I will specify which claims or case they concern, and whether they concern both cases. I am going to start with instructions for the first case.

A. DISCRIMINATION AND RETALIATION (First Lawsuit)

The first case, over plaintiff's non-selection as a Branch Manager, arises under three federal statutes that prohibit employers from discriminating and retaliating against employees.

The first of these statutes is Section 1981 of the Civil Rights Act. Specifically, Section 1981 prohibits employers from retaliating against employees in the terms and conditions of their employment, including not being promoted, for having filed internal or external complaints about race discrimination. Section 1981 also prohibits employers from discriminating against employees on account of their race.

The second statute is Title VII of the Civil Rights Act. Title VII makes it unlawful for an employer to discriminate or retaliate against employees in the terms and conditions of their

employment, including not being promoted, because the employee is a woman or is black or is a black woman; or because he or she has filed internal complaints or external complaints about discrimination based on race, as well as on sex, sex and race, color, religion, and national origin. In specific terms, Title VII provides that:

It shall be an unlawful employment practice for an employer:

> to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of that individual's race, color, religion, sex, national origin, or their race and sex;
>
> or . . .
>
> to retaliate against an employee because he or she has made a charge of discrimination or retaliation.

The third statute is the Age Discrimination in Employment Act or the ADEA. The ADEA makes it unlawful for an employer to discriminate against employees who are 40 years of age or older in the terms and conditions of their employment, including not being promoted, on account of their age.

In specific terms, the ADEA provides:

> It shall be unlawful for an employer:
>
> To fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

The ADEA also provides that:

> The prohibitions in the Age Discrimination In Employment Act shall be limited to individuals who are at least 40 years of age.

The discrimination statutes are not intended as a vehicle for judicial review of employment

decisions that are not the result of discrimination. Although the discrimination statutes require that an employer reach employment decisions without discriminating, they do not place an affirmative duty upon an employer to accord special treatment to an employee. An employer has the right to make business decisions, including selection decisions such as those at issue in this case, for good, bad, or no reasons at all, as long as they don't constitute discrimination. The laws do not expose an employer to liability merely because the employer may have misjudged an employee's job performance or made a personnel decision that was unwise or ill-advised. It is not your function in this case to second-guess the wisdom of any employment action which affected Ms. Gipson. Thus, even if you personally disagree with the actions that were taken or believe that they were harsh or unreasonable, if you find that discrimination was not a motivating factor for the actions, then you must return a verdict in the defendant's favor.

The same federal laws that prohibit discrimination also prohibit employers, like Wells Fargo, from taking retaliatory personnel actions against employees who have previously engaged in activity protected by these statutes, such as pursuing a complaint of employment discrimination. It is, therefore, unlawful for Wells Fargo to refuse to promote Ms. Gipson because she is pursuing a complaint of discrimination. It is undisputed in this case that plaintiff engaged in protected activity when she complained of discrimination at Wells Fargo, so the only issue for you to decide is whether plaintiff was not selected for the Branch Manager position as a result of that protected activity.

B. RETALIATION (Second Lawsuit)

The second case, relating to the termination of plaintiff's employment, arises under the D.C. Human Rights Act, which prohibits employers in the District of Columbia from retaliating

against employees in the terms and conditions of their employment, including the termination of their employment, for having filed a lawsuit, a charge with the Equal Employment Opportunity Commission, or an internal complaint alleging discrimination on the basis of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, disability, matriculation, political affiliation, or retaliation.

In specific terms, the D.C. Human Rights Act provides:

> (a) It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed ... of any right granted or protected under [the D.C. Human Rights Act by engaging in protected activity].
>
> (b) It shall be an unlawful discriminatory practice for any person to require, request, or suggest that a person retaliate against, interfere with, intimidate or discriminate against a person, because that person has opposed any practice made unlawful by this chapter, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing authorized under this chapter.

Like the federal laws, the D.C. Human Rights Act prohibits employers, like Wells Fargo, from taking retaliatory personnel actions against employees who have previously engaged in activity protected by these statutes, such as pursuing a claim of employment discrimination and retaliation. It is, therefore, unlawful for Wells Fargo to fire Ms. Gipson because she is pursuing a complaint of discrimination and retaliation. It is undisputed in this case that plaintiff engaged in protected activity when she filed an EEOC complaint and a lawsuit for discrimination and retaliation, so the only issue for you to decide is whether plaintiff was fired as a result of that protected activity.

**INTENT**

A. DISCRIMINATION (First Lawsuit)

The word discrimination means to take action against a person for a reason the law prohibits. The word "discrimination" denotes purposeful and intentional action. Discriminatory intent may be proven either by direct evidence such as statements made by a person whose intent is at issue, or by circumstantial evidence from which you can infer a person's intent. Thus, in making a determination as to whether there was intentional discrimination in this case, you may consider any statement made or act done or omitted by a person whose intent is in issue as well as all other facts and circumstances that indicate his or her state of mind. You may also infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

B. RETALIATION (First and Second Lawsuits)

The word retaliation means to take action against a person because that person did something. The word "retaliation" denotes purposeful and intentional action. Retaliatory intent may be proven either by direct evidence such as statements made by a person whose intent is at issue, or by circumstantial evidence from which you can infer a person's intent. Thus, in making a determination as to whether there was intentional retaliation in this case, you may consider any statement made or act done or omitted by a person whose intent is in issue as well as all other facts and circumstances that indicate his or her state of mind. You may also infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

**BURDENS OF PROOF**

A. DISCRIMINATION (First Lawsuit)

In order to prevail on her claim of discrimination in non-selection, Ms. Gipson, who the parties agree was qualified for Branch Manager, must show that she was not selected for the position, and that her race, sex, or age was a motivating factor in the decision not to select Ms. Gipson. Remember that the plaintiff must show only that race, sex, or age was a motivating factor in Wells Fargo's decision not to select her for the position. She does not have to show that it was the only or even a major factor in Wells Fargo's decision. If Wells Fargo has offered a non-discriminatory reason or reasons for its selection of Mr. Settles and its non-selection of Ms. Gipson and you believe that reason or reasons, then your verdict should be for the defendant. If, however, you do not believe that this reason or reasons were the real reason or reasons for the decision not to select Ms. Gipson, you may find but do not have to find that plaintiff has proven her claim of intentional employment discrimination, particularly if you believe that the defendant's representatives involved did not put forth honestly the reason or reasons for their decision.

B. RETALIATION (First and Second Lawsuits)

In each retaliation claim, it is up to you to decide whether plaintiff has proven her claim of retaliation by a preponderance of the evidence.

In the first lawsuit, it is plaintiff's burden to show that it is more likely so than not so that her engaging in protected activity was a motivating factor in the defendant's decision not to select Ms. Gipson for Branch Manager. If you find that she has met that burden and that it is more likely so than not so that her complaint of discrimination was a motivating factor in Wells

Fargo's decision not to select her for Branch Manager, then your verdict should be for the plaintiff as to the non-selection claim of retaliation. If, on the other hand, Wells Fargo has offered a non-retaliatory reason or reasons for its selection of Mr. Settles and its non-selection of Ms. Gipson and you believe that reason or reasons, then your verdict should be for the defendant as to the non-selection claim of retaliation. If, however, you do not believe that this reason or reasons were the real reason or reasons for the decision not to select Ms. Gipson, you may find but do not have to find that plaintiff has proven her claim of retaliation, particularly if you believe that the defendant's representatives involved did not put forth honestly the reason or reasons for their decision.

Similarly, in the second lawsuit, it is plaintiff's burden to show that it is more likely so than not so that her engaging in protected activity was a motivating factor in the defendant's decision to terminate her. If you find that she has met that burden and that it is more likely so than not so that her pursuing a complaint of discrimination and retaliation was a motivating factor in the decision of the defendant to terminate her employment, then your verdict should be for the plaintiff as to the termination claim of retaliation. If, on the other hand, Wells Fargo has offered a non-retaliatory reason or reasons for the termination of Ms. Gipson and you believe that reason or reasons, then your verdict should be for the defendant as to the termination claim of retaliation. If, however, you do not believe that this reason or reasons were the real reason or reasons for the decision to terminate Ms. Gipson, you may find but do not have to find that plaintiff has proven her claim of retaliation, particularly if you believe that the defendant's representatives involved did not put forth honestly the reason or reasons for their decision.

**DAMAGES**

A. DISCRIMINATION (First Lawsuit)

I will now give you instructions about how to calculate damages. You should not consider the fact that I am giving you this instruction as suggesting any view of mine as to which party is entitled to your verdict in this case, or that I think that you should award any damages. Those decisions are entirely for you to make. I am giving you these instructions solely for your guidance, in the event that you find in favor of Ms. Gipson on any of her claims against Wells Fargo. The fact that I do does not in any way mean that I think you should award any damages; that is entirely for you to decide. If you find for Ms. Gipson on her claim that the defendant discriminated against her because of her race or sex, then you must determine whether she is entitled to damages in an amount that is fair compensation. You may award compensatory damages only for injuries that Ms. Gipson proved were caused by the defendant's allegedly wrongful conduct. The damages that you award must be fair compensation, no more and no less. You may award compensatory damages for emotional pain and suffering, inconvenience, and mental anguish if you find that there were caused by defendant's discrimination on the basis of race or sex. No evidence of the monetary value of such intangible things as pain and suffering has been or need be introduced into evidence. There is no exact standard for fixing the compensation to be determined for these elements of damage. Any award you make should be fair in light of the evidence produced at trial.

In determining the amount of damages, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy,

speculation, or guesswork. On the other hand, the law does not require that the plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. You may award the plaintiff damages that are based on a just and reasonable estimate derived from relevant evidence. Similarly, the plaintiff does not need to show that there is an absolute certainty that the injury or loss will continue into the future. You may award damages to compensate the plaintiff for injury and losses that probably will continue.

This is complicated, ladies and gentlemen, with a total of seven claims. In certain instances, I will instruct you that you may award compensatory damages (in all but one). In other, more limited instances, I will instruct you that you may award compensatory damages as well as lost income.

B. RETALIATION (First and Second Lawsuits)

Similarly, if you find for Ms. Gipson on her claim that Wells Fargo retaliated against her by not selecting her for the position of Branch Manager because she complained of discrimination, or if you find for Ms. Gipson on her claim that Wells Fargo retaliated against her by terminating her because she complained of discrimination and retaliation, then you must determine whether she is entitled to damages in an amount that is fair compensation in each instance for which you find for Ms. Gipson. You may award compensatory damages only for injuries that the plaintiff proved were caused by the defendant's allegedly wrongful conduct in not selecting her for Branch Manager or in terminating her. The damages that you award must be fair compensation, no more and no less. You may award compensatory damages for emotional *pain and suffering, inconvenience, and mental anguish if you find that there were* caused by defendant's retaliation.

**CLAIMS**

There are seven separate claims or Counts that Ms. Gipson has asserted against Wells Fargo. You must consider each claim separately and individually and not let your determination as to one Count affect or influence your decision as to another Count.

**Count I – Non-Selection As Branch Manager**

In Count I, Ms. Gipson alleges that Wells Fargo retaliated against her for using its internal complaints process to allege that Wells Fargo discriminated against her on the basis of her race in not promoting her to Branch Manager and instead selecting John Settles.

If you find by a preponderance of the evidence that Ms. Gipson's use of the Wells Fargo internal discrimination complaints process to allege that Wells Fargo discriminated against her on the basis of her race was a motivating factor for Wells Fargo to deny her promotion to Branch Manager, then you must find for the plaintiff on Count I.

If not, then you must find for the defendant on this Count.

If you find for plaintiff on Count I, then you should award her whatever compensatory damages you see fit and you may award her for lost income.

**Count II: Non-Selection As Branch Manager**

In Count II, Ms. Gipson alleges that Wells Fargo retaliated against her for using its internal complaints process to allege that Wells Fargo discriminated against her on the basis of her sex or her race and her sex in not promoting her to Branch Manager and instead selecting John Settles. If you find by a preponderance of the evidence that Ms. Gipson's use of the Wells Fargo internal discrimination complaints process to allege that Wells Fargo discriminated against her on the basis of her sex or her race or her race and her sex was a motivating factor for Wells Fargo to deny her

promotion to Branch Manager, then you must find for the plaintiff on Count II.

If not, then you must find for the defendant on this Count.

If you find for plaintiff on Count II, then you should award her whatever compensatory damages you see fit, but you may not award her any lost income.

**Count III: Non-Selection As Branch Manager**

In Count III, Ms. Gipson alleges that Wells Fargo discriminated against her on the basis of her sex in not promoting her to Branch Manager and instead selecting John Settles.

If you find by a preponderance of the evidence that discrimination on account of Ms. Gipson's sex was a motivating factor for Wells Fargo to deny her promotion to Branch Manager, then you must find for the plaintiff on Count III.

If not, then you must find for the defendant on this Count.

If you find for plaintiff on Count III, then you should award her whatever compensatory damages you see fit, but you may not award her any lost income.

**Count IV: Non-Selection As Branch Manager**

In Count IV, Ms. Gipson alleges that Wells Fargo discriminated against her on the basis of her race and sex in not promoting her to Branch Manager and instead selecting John Settles.

If you find by a preponderance of the evidence that discrimination on account of Ms. Gipson's race and sex was a motivating factor for Wells Fargo to deny her promotion to Branch Manager, then you must find for the plaintiff on Count IV.

If not, then you must find for the defendant on this Count.

If you find for plaintiff on Count IV, then you should award her whatever compensatory damages you see fit but you may not award her any lost income.

**Count V: Non-Selection As Branch Manager**

In Count V, Ms. Gipson alleges that Wells Fargo discriminated against her on the basis of her race in not promoting her to Branch Manager and instead selecting John Settles.

If you find by a preponderance of the evidence that discrimination on account of Ms. Gipson's race was a motivating factor for Wells Fargo to deny her promotion to Branch Manager, then you must find for the plaintiff on Count V.

If not, then you must find for the defendant on this Count.

If you find for plaintiff on Count V, then you should award her whatever compensatory damages you see fit and you may award her for lost income.

**Count VI: Non-Selection As Branch Manager**

In Count VI, Ms. Gipson alleges that Wells Fargo discriminated against her on the basis of her age in not promoting her to Branch Manager and instead selecting John Settles.

If you find by a preponderance of the evidence that discrimination on account of Ms. Gipson's age was a motivating factor for Wells Fargo to deny her promotion to Branch Manager, then you must find for the plaintiff on Count VI.

If not, then you must find for the defendant on this Count.

If you find in favor of plaintiff on this count as to her not receiving the branch manager position, you should award plaintiff whatever sum you find by a preponderance of the evidence will fairly and justly compensate plaintiff for any income you find plaintiff would have earned in her employment with the defendant had she received the job, through the date of your verdict, minus the amount of earnings and benefits from other employment received during that time.

I must also ask you to make one special finding. If you find that Ms. Gipson's not being

selected for the position of branch manger was motivated by her age, I must ask you to also determine whether that violation of Ms. Gipson's right not to be so discriminated against was willful. You may find that the violation was not willful if the defendant proves to your satisfaction that the act or omission which gave rise to backpay damages was taken in good faith and that the defendant had reasonable grounds to believe that its act or omission did not violate the law. If you find the defendant fails to meet that burden, and you find the violation was willful, you may award liquidated damages. Liquidated damages permit you to double the award of any lost income you return. These liquidated damages are the liquidated damages to which Mr. Seldon referred in his closing argument.

**Count VII: Termination of Employment**

In Count VII, Ms. Gipson alleges that Wells Fargo retaliated against her by terminating her employment for filing and pursuing an internal complaint of discrimination over not being selected as Branch Manager, by filing a charge with the Equal Employment Opportunity Commission over not being selected as Branch Manager, or by filing and pursuing the lawsuit over her not being selected as a Branch Manager,

If you find by a preponderance of the evidence that Wells Fargo's decision to terminate Ms. Gipson's employment was a motivating factor of retaliation for her filing and pursuing an internal complaint of discrimination over not being selected as Branch Manager, by filing charge with the Equal Employment Opportunity Commission over not being selected as Branch Manager, or by filing and pursuing the lawsuit over her not being selected as a Branch Manager, then you must find for the plaintiff on Count VII.

If not, then you must find for the defendant on this Count.

If you find for plaintiff on Count VII, then you should award her whatever compensatory damages you see fit.

If you find in favor of plaintiff on this count as to her termination, you should award plaintiff whatever sum you find by a preponderance of the evidence will fairly and justly compensate plaintiff for any wage you find plaintiff would have earned in her employment with the defendant had she not been terminated, through the date of your verdict, minus the amount of earnings and benefits from other employment received during that time.

A plaintiff must exercise reasonable diligence in minimizing or reducing her damages. This is referred to as "mitigation of damages." The defendant must prove by a preponderance of the evidence that a plaintiff failed to mitigate her damages or that the plaintiff's damages should be reduced because she would have found substantially comparable employment had she exercised reasonable diligence.

In each instance where I instructed you that you may award Ms. Gipson for lost income, you should apply the above standard to mitigate damages.